460 So.2d 353 (1984)
Daniel Lee DOYLE, Appellant,
v.
STATE of Florida, Appellee.
No. 62212.
Supreme Court of Florida.
October 18, 1984.
Rehearing Denied January 3, 1985.
*355 Michael D. Gelety, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Appellant was tried by jury and convicted of first-degree murder and sexual battery in the death of Pamela Kipp. The jury recommended a sentence of death which the trial judge imposed. The case is now before this Court on direct appeal pursuant to article V, section 3(b)(1) of the Florida Constitution. We affirm the conviction and the sentence.
Appellant Doyle was a neighbor and relative of the Kipp family, including Pamela Kipp, the victim. On September 5, 1981, he was doing yard work in the Kipp's yard and later drove his truck which was full of branches and leaves to a nearby area to unload the debris. Witnesses reported seeing Pamela Kipp jogging in the same area at the same time. The victim never returned home. After a search, a skeleton later identified as that of Monica Ruddick was discovered in the area where the defendant had been dumping leaves. Shortly thereafter, the victim's body was discovered about 200 yards from the area where Doyle had been dumping leaves. Found near the victim's nude body were a beige carpet and fresh tree clippings as well as ruts in the mud where a vehicle had been stuck. Doyle's truck had been stuck in the mud in the area the day of the murder and another individual had helped him pull his truck out of the mud.
Before the discovery of the victim's body, Doyle had been questioned by police since he reportedly was the last person to see the victim. Later, Doyle and his girlfriend went to the police station where he was given his rights and where he gave a tape-recorded statement. Doyle was then confronted with inconsistencies in his story concerning freshness of certain grass clippings at a different location and the date of the presence of a front-end loader at the dump site, after which he made a non-recorded inculpatory statement to the police, with such statement being repeated with modifications in subsequent tape-recorded statements at the county jail. Doyle admitted having sex with the victim and killing her, claiming, however, that he was intoxicated at the time and had no recollection of details of the incident. The victim was found to have been killed by strangulation and to have been sexually battered while still alive. Doyle claimed, in one statement, that he had asked the victim to help him get his truck out of the mud and he attacked her, she fought back, and he then strangled her and had intercourse with her on the carpet in the grass. He also admitted telling his girlfriend on a number of occasions subsequent to the murder that he had killed the victim.
At the suppression hearing, but not at trial, it was reported that Doyle had undergone a hypnosis session after his last taped confession in an attempt to recall further details of the murder. The session lasted an hour and was taped. Allegedly, Doyle admitted the Kipp killing as well as the Ruddick killing, but then recanted and denied killing Monica Ruddick. However, both the tape of this session as well as all notes were lost and never recovered.
Doyle was indicted for the first-degree murder of Pamela Kipp and the sexual battery upon Pamela Kipp with force likely to cause serious personal injury. At trial, he was found guilty of both charges and at the sentencing phase,[1] the jury voted for an *356 advisory sentence of death. The trial court concurred and sentenced Doyle to death.
Appellant's first issue concerns the lost tape recording of the hypnosis session in which Doyle allegedly again confessed to the Kipp murder. Asserting that this was evidence which the prosecution was required to make available to the defense pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), appellant argues that its unavailability was a denial of due process which necessitates dismissal of the charges against him. The Brady rule, however, applies only to evidence which is favorable to the defendant and which is material to issues of guilt and punishment. This court has held that due process requirements are fulfilled "where the contents of a lost or destroyed tape recording would not have been beneficial to the accused, thus demonstrating a lack of prejudice." State v. Sobel, 363 So.2d 324, 328 (Fla. 1978). In light of the three taped confessions appellant made before undergoing hypnosis and in light of testimony that appellant again confessed to the Kipp murder during that hypnosis session, we find that such a showing has been made and appellant was not denied any measure of due process on this ground.
Appellant further contends that his fifth and sixth amendment rights were violated during interrogation and the confessions he made as a result of that interrogation should therefore have been suppressed. We find no reason to question the trial judge's findings that Doyle was given adequate Miranda warnings; see Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); and that he was capable of understanding the significance of those warnings; Ross v. State, 386 So.2d 1191 (Fla. 1980); Fields v. State, 402 So.2d 46 (Fla. 1st DCA 1981). Further, appellant's claim that he was denied access to an attorney during questioning is a personal one which must be invoked by the defendant in some unambiguous manner. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Craig, 237 So.2d 737 (Fla. 1970). The record indicates that Doyle's only mention of an attorney occurred early in the first interrogation session when he remarked that the attorney who had represented him in an earlier matter was currently out of town. Although his girlfriend later attempted to reach an attorney for Doyle, she was unable to testify that Doyle had asked her to do so. At no time in the questioning did Doyle indicate an unwillingness to answer questions in the absence of counsel. On these facts it is impossible to find any indication that appellant wished to deal with the police only through counsel, as is necessary to invoke the protection of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 S.Ct. 378 (1981). Waterhouse v. State, 429 So.2d 301 (Fla.), cert. denied, ___ U.S. ___, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983).
Appellant's assertion that certain remarks made by the trial judge during voir dire and in excusing an allegedly antagonistic witness so prejudiced the proceedings as to require a mistrial is without merit. Read in context, these remarks do not appear to have been error, but even were we to find error, there could be no finding of prejudice sufficient to require a new trial. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977); Hayes v. State, 368 So.2d 374 (Fla. 4th DCA), cert. denied, 378 So.2d 345 (Fla. 1979).
We also find no error in the trial judge's refusal to grant a mistrial for alleged juror misconduct. During a court recess after the state had presented its evidence, an unidentified juror happened to encounter Doyle's attorney in a corridor and said, "Good luck. You're going to need it." Although denying the motion for mistrial, the judge did give a curative cautionary *357 instruction to the jury which the attorney, without relinquishing his demand for mistrial, conceded was satisfactory.[2] The determination of whether substantial justice warrants the granting of a mistrial is within the discretion of the trial court. Evers v. State, 280 So.2d 30 (Fla. 3d DCA 1973). Dealing with the conduct of jurors is likewise left to the sound discretion of the court. Walker v. State, 330 So.2d 110 (Fla. 3d DCA), cert. denied, 341 So.2d 1087 (Fla. 1976). We find no abuse of that discretion here.
Finally, appellant challenges the imposition of the death penalty on grounds that the court failed to find mitigating circumstances and improperly found aggravating factors. In the penalty phase of the trial, the defense presented evidence concerning Doyle's low intelligence, classed as "dull normal" and "borderline retarded" by expert witnesses, and of emotional disturbance arising from the death of his brother in Doyle's arms in a hunting accident the previous year. Although the sentencing order did mention that defendant had been found competent to stand trial, it is clear from the context that this is not the standard the court used to determine mitigation. Rather, the court obviously rested its determination on the fact that Doyle had been able to attend school, hold jobs and function in society. This Court has held that where the defense presented evidence of mitigating circumstances and where the trial court considered that evidence in imposing sentence, "mere disagreement with the force to be given such evidence is an insufficient basis for challenging a sentence." Quince v. State, 414 So.2d 185, 187 (Fla.), cert. denied, 459 U.S. 895, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). We find no error here.
The trial court found three aggravating factors: the murder was committed in the course of a sexual battery; the murder was especially heinous, atrocious and cruel; and the murder was committed to avoid lawful arrest. These are factors set forth in the Florida death penalty statute. The first two were properly found on the evidence before the court. Magill v. State, 428 So.2d 649 (Fla.), cert. denied, ___ U.S. ___, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983); Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).
In particular, the finding that the murder was heinous, atrocious and cruel was based on the evidence that the victim died of strangulation which occurred over a period of up to five minutes and that prior to losing consciousness the victim was aware of the nature of the attack and had time to anticipate her death. Murder by strangulation has consistently been found to be heinous, atrocious and cruel because of the nature of the suffering imposed and the victim's awareness of impending death. Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976).
Furthermore, the court found that Doyle had expressed no remorse for the killing and considered that as evidence that the crime was heinous, atrocious and cruel. Lack of remorse is not a separate aggravating factor under the statutory scheme, and subsequent to this trial, this Court ruled that lack of remorse was not to be considered as in any way affecting the finding of aggravating circumstances. Pope v. State, 441 So.2d 1073 (Fla. 1984). Nonetheless, disregarding that language in the sentencing order, we find the evidence on the record before us was sufficient to *358 prove this factor beyond a reasonable doubt.
As for the remaining aggravating factor, the court based its finding that the murder was committed to avoid lawful arrest on its finding of fact: The victim knew her attacker and would report the rape. In a prior case, Doyle had been given a suspended five-year sentence which would be imposed if he were convicted of any crime. The trial court therefore inferred that the murder was committed to prevent the report of the rape. We have consistently held that where the victim is not a law enforcement officer, the state must prove beyond a reasonable doubt that the dominant motive for the murder was the elimination of witnesses. Menendez v. State, 368 So.2d 1278 (Fla. 1979); Riley v. State, 366 So.2d 19 (Fla. 1978), cert. denied, 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 985 (1982). It is a tragic reality that the murder of a rape victim is all too frequently the culmination of the same hostile-aggressive impulses which triggered the initial attack and not a reasoned act motivated primarily by the desire to avoid detection. Based on the facts in the record before this Court, we hold that the state has not proven this aggravating factor beyond a reasonable doubt.
The trial court properly found two aggravating factors and no mitigating circumstances. The death penalty was appropriate. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
Accordingly, Doyle's conviction for first-degree murder and the imposition of the death penalty are affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs in the conviction but dissents from the sentence with an opinion, in which McDONALD, J., concurs.
OVERTON, Justice, concurring in part, dissenting in part.
I concur with the conviction but find that under the dictates of the United States Supreme Court decision in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and our decisions in Mines v. State, 390 So.2d 332 (Fla. 1981), Ferguson v. State, 417 So.2d 631 (Fla. 1982), and Ferguson v. State, 417 So.2d 639 (Fla. 1982), this cause must be remanded to the trial judge for resentencing.
In Eddings, the 16-year-old defendant was seriously emotionally disturbed and had been neglected and physically abused. In sentencing, the trial judge refused to consider in mitigation Eddings' family history and emotional disturbance. The Supreme Court reversed the death sentence, concluding that these facts constituted valid mitigating circumstances and could not be excluded from consideration by the sentencing judge. The Court stated:
[I]t is not disputed that he was a juvenile with serious emotional problems, and had been raised in a neglectful, sometimes even violent, family background... .
[J]ust as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in sentencing.
Id. 455 U.S. at 116, 102 S.Ct. at 877. The Court remanded for a new sentencing procedure. In the instant case, similar circumstances were presented. The record reflects that the appellant was 21 years old; that he had an IQ of between 70 and 80, and was borderline retarded; that he was suffering from organic brain defects, which caused dyslexia, and had emotional problems; that he had been enrolled in handicapped classes; and that his mental condition was chronic.
Under our death sentence process, two mitigating circumstances relating to mental condition are set forth in section 921.141(6)(b) and (f), Florida Statutes (1983). In considering these statutory mitigating *359 circumstances, the trial judge found as follows:
B. The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance. [§ 921.141(6)(b).]
CONCLUSION
There is no mitigating circumstance under this paragraph.
... .
F. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. [§ 921.141(6)(f).]
FACT
There has been evidence that the defendant had in the past held jobs and attended school. The doctors that were ordered to examine the defendant determined he was sane and able to aid in his defense and this Court found him competent to stand trial.

(Emphasis added.)
In my view, this record clearly indicates that the trial judge applied the wrong standard in determining the presence or absence of the above mitigating circumstances. This case cannot be distinguished from our decisions in Mines and the two Ferguson cases. The sentencing order reflects that the trial judge "misconceived the standard to be applied," as did the judge in the Ferguson cases, when he utilized the tests for sanity at the time of the offense and competency to stand trial in determining the applicability of section 921.141(6)(b) and (f). See 417 So.2d at 638; 417 So.2d at 645.
I conclude that mitigating circumstances under section 921.141(6)(b) and (f) were established in this record by unrefuted testimony. Although these mitigating circumstances do not conclusively override the aggravating circumstances found by the trial judge, under Eddings, Mines, and the Ferguson cases, the trial judge must consider mitigating evidence that is established in the record. The judge is free, however, to determine the weight to be accorded it. The evidence in this record requires that this cause be remanded for resentencing with direction that the trial judge evaluate mitigating evidence of the appellant's background and mental condition.
McDONALD, J., concurs.
NOTES
[1] The trial court reserved sentencing on the sexual battery charge. Though not asked to do so, we have studied the record and found that Doyle's conviction for sexual battery was proper. We thus affirm that conviction.
[2] Appellant also filed an amended motion for new trial on the basis of jurors' remarks overheard in a restaurant before the close of the case. The jurors allegedly stated that they were certain of Doyle's guilt and could tell he had committed the murder just by looking at him. The allegations were unsupported in any manner in the motion and appellant conceded in oral argument that the issue had not been properly preserved for appeal. Thus we do not consider it.