**Aubrey Dennis ADAMS,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, and Jim Smith, Respondents-Appellees.**

No. 84–3646.

United States Court of Appeals,
Eleventh Circuit.

June 17, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1985.

Kenneth R. Hart, Timothy B. Elliott, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, Fla., for petitioner-appellant.

Margene A. Roper, Asst. Atty. Gen., Port Orange, Fla., for respondents-appellees.

Before RONEY, FAY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Petitioner, Aubrey Dennis Adams, was convicted of first degree murder in a Florida court in 1978. Following the jury's recommendation, the trial judge imposed the death sentence. Direct appeals proved unsuccessful, *Adams v. State*, 412 So.2d 850 (Fla.), *cert. denied*, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982), as have subsequent petitions in state court seeking post-conviction and habeas corpus relief. *Adams v. State*, 456 So.2d 888 (Fla.1984). This is an appeal from the district court's denial of the petitioner's federal habeas petition. *Adams v. Wainwright*, No. 84–170–Civ–Oc–16 (M.D.Fla. Sept. 18, 1984). We affirm.

## I. FACTS

In March 1978, the body of an eight year old girl was discovered in a remote wooded area near Ocala, Florida. The petitioner's conviction for the young girl's murder was based on circumstantial evidence and incriminating statements he made to investigating officers. Physical evidence found near the body was similar to evidence found in the petitioner's home and automobile. In a written statement, the petitioner admitted that he had offered the victim a ride home from school, she had accepted, and he had driven in another direction. The petitioner remembered "being stopped somewhere and she was screaming and I put my hand over her mouth and she quit breathing." Verbally, the petitioner admitted removing the victim's clothes, using rope to tie her hands, and placing plastic bags over her body. When asked if he had any type of sexual relations with the victim, the petitioner said he thought he had tried but could not do it or could not bring himself to do it. The testimony of the officers indicates that the petitioner had difficulty remembering the details of the killing when questioned.

## II. ISSUES AND DISCUSSION

### A. The Petitioner's Mental Competence to Stand Trial and be Sentenced.

The trial court granted a pretrial motion by the defense for an order allowing a private psychiatrist to enter the petitioner's prison and examine him. In a subsequent pretrial hearing on the State's motion for a separate psychological examination, the petitioner's attorney asserted that he knew of no evidence having been presented to the court to suggest incompetency and that, absent such evidence, it would be improper for the court to order an additional examination. The State's motion was denied. The petitioner did not claim mental incompetency or allege an insanity defense at trial. In the presentence report, however, the defense attorney is attributed with the statement that the petitioner had been unable to recall the details of the crime and this had impaired the petitioner's assistance in his defense. Moreover, the petitioner now proffers a psychological evalua-

tion made after his conviction which purports to demonstrate that he suffers from catathymic amnesia, a mental disorder which prevents him from recalling traumatic experiences. Based on this recent evaluation, the petitioner contends that in 1978 he was incompetent to stand trial and be sentenced.

On motion for post-conviction relief, the Supreme Court of Florida summarily held that the petitioner's claim of mental incompetence was procedurally barred because he had failed to argue the claim in direct appeals to the state courts. *Adams v. State, supra,* 456 So.2d at 890, *citing McCrae v. State,* 437 So.2d 1388 (Fla.1983). No evidentiary hearing was held in state court to determine whether the petitioner was mentally incompetent at the time of trial and sentencing.

The district court below similarly denied the petitioner's claim of incompetency, (1) citing procedural default or waiver due to his failure to argue this claim before the state courts on direct appeal, and (2) finding, in any event, that insufficient evidence had been presented to raise a legitimate doubt as to the petitioner's mental competence and thereby establish his entitlement to a competency hearing. Again, no evidentiary hearing was held. Instead, the district court relied solely on the trial transcript and other documentary evidence.

■ 1. *Procedural Default.* Binding precedent fully supports the petitioner's contention that the procedural default rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), does not operate to preclude a defendant who failed to request a competency hearing at trial or pursue a claim of incompetency on direct appeal from contesting his competency to stand trial and be sentenced through post-conviction proceedings. *See Zapata v. Estelle,* 588 F.2d 1017, 1021 (5th Cir.1979); *Nathaniel v. Estelle,* 493 F.2d 794, 798 (5th Cir.1974); *Bruce v. Estelle,* 483 F.2d 1031, 1037 (5th Cir.1973). Indeed, as the Supreme Court stated in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815

(1966), "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* at 384, 86 S.Ct. at 841; *Zapata v. Estelle, supra,* 588 F.2d at 1021; *Bruce v. Estelle, supra,* 483 F.2d at 1037. Therefore, the district court below erred in holding that the petitioner was procedurally barred from pursuing a claim of mental incompetency in a federal habeas corpus proceeding.

The district court's opinion attempts to distinguish *Pate v. Robinson* on factual grounds, noting that Robinson's sanity had been "very much at issue" throughout the criminal proceedings against him, while the petitioner in this case considered but rejected proffering an insanity plea. This factual difference does exist, but the district court's reasoning pretermits the initial conclusion in *Pate v. Robinson* and ignores subsequent decisions in this Circuit. The Supreme Court in *Pate v. Robinson* first reasoned that one who is incompetent cannot waive his right to a competency hearing. The secondary basis for its holding was that, "[i]n any event," waiver had not actually occurred because Robinson had made his sanity an issue throughout his trial. *Pate v. Robinson, supra,* 383 U.S. at 384, 86 S.Ct. at 841. Later decisions in this Circuit have applied the initial rationale of *Pate v. Robinson* in such a manner as to obviate the need for any inquiry into whether a convicted defendant who is alleging mental incompetency actually waived his right to a competency hearing at the time of his trial. These decisions have squarely held that waiver cannot occur. *See Zapata v. Estelle, supra,* 588 F.2d at 1021; *Nathaniel v. Estelle, supra,* 493 F.2d at 798; *Bruce v. Estelle, supra,* 483 F.2d at 1037.

■ 2. *Evidence of Mental Incompetence.* Although the petitioner is not procedurally barred in these habeas proceedings from challenging his mental competency, he is not automatically entitled to a hearing on this claim.[1] The legal test for

---

**1.** Nor is the petitioner automatically entitled to a hearing on his claim that his attorney ren-

dered ineffective assistance by not fully investi-

mental competency is whether, at the time of trial and sentencing, the petitioner had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and whether he had "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). As a matter of procedural due process, a criminal defendant is entitled to an evidentiary hearing on his claim of incompetency if he presents clear and convincing evidence to create a "real, substantial and legitimate doubt as to [his] mental capacity ... to meaningfully participate and cooperate with counsel...." *Bruce v. Estelle, supra*, 483 F.2d at 1043; *see also Zapata v. Estelle, supra*, 588 F.2d at 1021–22; *Nathaniel v. Estelle, supra*, 493 F.2d at 798. The standard of proof is high. The facts must "positively, unequivocally and clearly generate" the legitimate doubt. *Bruce v. Estelle, supra*, 483 F.2d at 1043; *see also Pride v. Estelle*, 649 F.2d 324, 326 (5th Cir.1981) (requiring "more than a showing by a preponderance of the evidence" that the petitioner might have been incompetent at the time of the state trial).

The district court below found that the petitioner had not presented sufficient evidence to create a "real, substantial, and legitimate doubt" as to his mental competence to stand trial and be sentenced. Therefore, he was not entitled to an evidentiary hearing. In reaching this conclusion, the district court considered the trial transcript and other supporting documents. No live testimony was taken. Our review of findings based on such a record is, nevertheless, constrained by the usual strictures of the clearly erroneous standard. *Anderson v. Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *see Dothan Coca-Cola Bottling Co. v. United States*, 745 F.2d 1400, 1402–04 (11th Cir.1984) (choosing the clearly erroneous standard where the lower

court considered only transcript of prior trial and other documentary evidence). Under the proper standard of review, we agree with the finding of the district court, though not with its reasoning entirely.

▮ In finding that the petitioner had failed to raise a real, substantial, and legitimate doubt as to his competency to stand trial, the district court noted the statement made by the petitioner's attorney at the pretrial hearing that he then knew of no evidence to suggest the petitioner was incompetent. This statement was made, but its importance is limited by the context. As of the date of the hearing, the psychological testing of the petitioner was not sufficiently complete for the attorney to conclude that no claim of incompetency would be raised. Indeed, the transcript of the hearing clearly reflects that the attorney had not yet determined whether raising such a claim would be appropriate.[2] Therefore, the statement itself should be given little weight in deciding whether a doubt as to the petitioner's competency exists. By contrast, it is highly significant that the petitioner's counsel did not later claim during trial or sentencing that the petitioner was in fact incompetent. This failure to raise the competency issue is persuasive evidence that the petitioner's mental competence was not in doubt and therefore he is not entitled to an evidentiary hearing. *E.g., Reese v. Wainwright*, 600 F.2d 1085, 1092 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

▮ The district court also criticized the "self-serving" nature of the statement attributed to the petitioner's attorney in the presentencing report to the effect that the petitioner's ability to assist with his defense had been limited because he could not recall the details of the killing. We are not persuaded by this conclusory line of reasoning. More important to our decision to affirm the district court's finding is the

gating his competency. *See infra* note 14 and accompanying text.

**2.** The petitioner's attorney stated at the hearing that the petitioner's family intended to engage a

psychiatrist "to examine [the petitioner] prior to the filing of any suggestions of competency and sanity, if the same were appropriate."

limited nature of the statement itself. The presentence report summarizes the attorney's remarks: "Prior [to] and during the trial, Dennis Adams could not remember and therefore could not provide information concerning the killing that would assist with his defense." The district court recognized in a footnote, and we agree, that this statement is quite different from a contention that the petitioner lacked the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and lacked "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States, supra,* 362 U.S. at 402, 80 S.Ct. at 789. While a defendant's inability to remember his participation in a crime may have some bearing on whether he is mentally incompetent, it is possible for a defendant to have no recall of his involvement in a crime and yet fully understand the proceedings against him and cooperate meaningfully with his attorney in his defense. The right not to be tried and sentenced unless mentally competent does not extend so far as to ensure total recall.

■ Finally, the district court below discounted the recent psychological evaluation diagnosing the petitioner as suffering from catathymic amnesia. As had the Florida Supreme Court on the petitioner's motion for post-conviction relief, the district court concluded that the new psychological evaluation reflected only the petitioner's present condition and shed little light on his condition at the time of trial and sentencing. On appeal, the petitioner argues that the evaluation is not limited in analysis to his present condition, but we find nothing in the record to support this contention. The evaluation does not even appear to have been made a part of the record on appeal, and thus we are unable to consider its content. We cannot say, then, that the

district court's finding is erroneous. Having failed to raise a real, substantial, and legitimate doubt as to his competency to stand trial and be sentenced, the petitioner is not entitled to an evidentiary hearing on this claim.

### B. The Felony-Murder Instruction at the Guilt-Innocence Phase.

The indictment charged the petitioner with premeditated murder. Felony murder was not alleged. However, the verbal charge given the jury during the guilt-innocence proceedings listed, as "murder in the first degree," both premeditated murder and felony murder, with the latter being defined as killing during the commission of, or an attempt to commit, "rape,[3] ... abominable and detestable crime against nature or kidnapping...." The Florida statute prohibiting abominable and detestable crimes against nature had been declared unconstitutional before the petitioner's trial. *Franklin v. State,* 257 So.2d 21 (Fla. 1971). The jury returned a general verdict finding the petitioner guilty of murder in the first degree, without specifying whether the crime was premeditated or whether it simply occurred while the petitioner was committing or attempting to commit one of the enumerated felonies.

In *Stromberg v. California,* 283 U.S. 359, 368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931), the Supreme Court held that a conviction cannot be upheld if (1) the jury was instructed that a guilty verdict could be returned with respect to any one of several listed grounds, (2) it is impossible to determine from the record on which ground the jury based the conviction, and (3) one of the listed grounds was constitutionally invalid. Citing *Stromberg,* the petitioner claims that the trial court's reference to an invalid crime, when coupled with the jury's general verdict, necessitates a reversal.[4]

---

**3.** The reference to rape here was in error, since the crime did not exist under Florida law. Had the felony-murder instruction been warranted in the first instance, the proper instruction would have referenced and defined sexual battery. *See Adams v. State, supra,* 412 So.2d at 852. However, because we hold that the jury considered and found the petitioner guilty only

of premeditated murder, this error in the felony-murder definition was harmless.

**4.** The petitioner further claims that his attorney's failure to object to the trial court's instructions and the general form of the verdict constitutes ineffective assistance of counsel. Since we hold the substantive *Stromberg* claim to be with-

The Florida Supreme Court rejected this claim. Without citing *Stromberg,* the court engaged in a determination of whether the evidence was sufficient to support a finding of premeditated murder. The court held that, "[a]lthough an erroneous or uninvited felony murder instruction was given, the evidence of premeditation was sufficient to render the erroneous instruction harmless." *Adams v. State, supra,* 412 So.2d at 853.

The Florida Supreme Court's approach to deciding the petitioner's *Stromberg* claim was incorrect. The proper approach is to examine only the trial court's instructions and the jury's verdict, not the sufficiency of the evidence to support the verdict. *Stromberg* does not suggest a harmless error standard based on overwhelming evidence of guilt under the valid portion of the jury charge. Rather, *Stromberg* states simply that if it is "impossible" to say on which ground the verdict rests, the convic-

tion must be reversed. *Stromberg v. California, supra,* 283 U.S. at 368, 51 S.Ct. at 535.

The district court below reiterated the Florida court's conclusion as to the sufficiency of the evidence before approaching this claim correctly by examining the jury instructions and the closing arguments made at trial and asking whether, under the circumstances, the jury could only have considered and found premeditated murder. The district court concluded that the record left no uncertainty as to the ground on which the verdict rested. That ground was premeditated murder. After reviewing the transcript of the trial, particularly the closing arguments at the guilt-innocence phase and the trial court's instructions, we agree.

■ The trial court's reference to the capital felony of killing during the commission of or an attempt to commit rape, a crime against nature, or kidnapping as murder in the first degree appears early in the instructions as part of what were, in essence, statutory definitions.[5] The actual

---

out merit, the attorney's failure to object cannot be held to constitute ineffective assistance.

5. The trial court's instructions state, in relevant part:

The Defendant, Aubrey Dennis Adams, Jr., is charged with the crime of first degree murder in that on January the 23rd, 1978, in Marion County, Florida, he did unlawfully, from a premeditated design to effect the death of Trisa Gail Thornley ... kill and murder Trisa Gail Thornley ... in violation of Florida Statute 782.04.

The charge of premeditated murder includes the lesser charges of: One, second degree murder; two, third degree murder; and, three, manslaughter.

The Defendant has entered his plea of not guilty. The effect of this plea is to require the State to prove each material allegation of the Indictment beyond and to the exclusion of every reasonable doubt before the Defendant may be found guilty.

The killing of one human being by another is called homicide. Every homicide falls within one of these four classes: One, justifiable homicide; two, excusable homicide; three, murder in the first, second or third degree; and, four, manslaughter.

The circumstances of each case determine whether a homicide is justifiable, excusable, murder or manslaughter.

Justifiable homicide and excusable homicide are lawful. Murder and manslaughter are unlawful and constitute violations of the criminal laws.

The essential elements of unlawful homicide, together with other matters that must be proved beyond and to the exclusion of every reasonable doubt before there can be a conviction in this case, are as follows: One, Trisa Gail Thornley is, in fact, dead; two, such death was caused by the criminal act or agency of another; and, three, the death was caused by the Defendant, Aubrey Dennis Adams, Jr.

These four classes of homicide must now be defined to you so that you can properly understand them.

The first class that I made reference to: The killing of a human being is justifiable homicide and lawful when...

The second class: Excusable homicide is...

Homicide is excusable and lawful if it is committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used....

A sudden and sufficient provocation is...

The heat of passion is...

A dangerous weapon is...

The third class: Murder in the first degree, is the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or any human being.

A premeditated design to kill is ...

The question of premeditated design is a question of fact to be determined by the Jury...

and controlling charge came later in the instructions, when the trial court told the jurors that, if the elements of homicide were found, their next task would be to determine its degree. At this point, premeditated murder was the only killing stated to constitute murder in the first degree.[6] Therefore, the jurors were actually instructed to consider only premeditated murder as murder in the first degree. That their consideration was so limited is further evidenced by three significant facts: (1) a felony-murder theory was not advanced at trial, (2) the closing arguments of both the State and the petitioner focused on premeditation to the complete exclusion of felony murder,[7] and (3) the indictment charging only premeditated murder was submitted to the jurors along with all of the evidence for use in their deliberations. Under these circumstances, it is not impossible to determine on which ground the petitioner's conviction for first degree murder rests. The record reflects certainty that the conviction was for premeditated murder and not felony murder.

## C. The Failure to Instruct as to the Elements of Underlying Felonies.

After instructing the jury that killing during the commission of, or an attempt to commit, rape or kidnapping constituted murder in the first degree, the trial court failed to define the elements of these underlying felonies. The petitioner here contends that the incomplete instruction so infected the guilt-innocence phase of his trial as to violate due process, in that it deprived him of the right to have the jury decide whether each element of the crime had been proved beyond a reasonable doubt.[8] *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *cf. Glenn v. Dallman*, 686 F.2d

---

The killing of a human being in committing, or attempting to commit any arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping is murder in the first degree, even though there is no premeditated design or intent to kill.

If a person kills another while he is trying to do or commit any arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping, or while escaping from the immediate scene of such crime, the killing is in the perpetration of or in the attempt to perpetrate such arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping and is murder in the first degree.

6. The listed felonies were only mentioned by reference in order to distinguish all other felonies as relevant to a finding of murder in the *third* degree:

To summarize: The essential elements of an unlawful homicide which must be proved beyond a reasonable doubt in this case before there can be a conviction of any offense are as follows: One, that Trisa Gail Thornley is, in fact, dead; two, that the killing was wrongful and by the means stated in the Indictment; three, that Trisa Gail Thornley was killed by the Defendant; and, four, that the killing was neither justifiable or [sic] excusable homicide.

If the elements are established, then it will be necessary for you to determine the degree of the unlawful homicide.

*If the Defendant, in killing the deceased, acted from a premeditated design to effect the death of the deceased, or some other human being, he should be found guilty of murder in the first degree.* (emphasis added).

If the killing was not from a premeditated design to effect the death of any human being, but was in the perpetration of an act imminently dangerous to another, evincing a depraved mind, regardless of human life, the Defendant should be found guilty of murder in the second degree.

If the killing took place while the Defendant was engaged in the commission of a felony other than arson, *rape*, robbery, burglary, the *abominable and detestable crime against nature* or *kidnapping*, the Defendant should be found guilty of murder in the *third* degree. (emphasis added).

If the killing was by the act, procurement or culpable negligence of the Defendant and was not murder in any degree or justifiable or excusable homicide, the Defendant should be found guilty of manslaughter.

Of course, if any one of the essential elements of any unlawful homicide has not been proved beyond a reasonable doubt, the Defendant should be found not guilty.

7. Both the prosecuting attorney and the petitioner's attorney equated first degree murder with premeditated murder for purposes of this trial.

8. The petitioner also raises an ineffective assistance of counsel claim based on his trial attorney's failure to object to the incomplete charge. Since we hold the underlying claim to be without merit, the attorney's failure to object cannot constitute ineffective assistance.

418 (6th Cir.1982) (vacating a conviction where the trial court had omitted in its instructions an essential element of the only crime charged; harmless error rule held inapplicable). However, since we have already determined that the jury considered and found only premeditated murder, given the particular circumstances of this trial, the incomplete instruction did not deprive the petitioner of his right to have a fully informed jury decide guilt or innocence. The petitioner does not claim that the trial court improperly instructed the jury as to the necessary elements of proof for a finding of premeditated murder. Failing to inform the jury as to the elements of the felonies incorrectly mentioned but not charged in the indictment and not considered or found by the jury does not constitute reversible error.

An analogous claim is raised with respect to the trial court's instructions at the sentencing phase of the petitioner's trial. The instructions listed the statutory aggravating factors that the jury could properly consider in reaching an advisory verdict. One of the three aggravating factors was that the killing had occurred during the commission of, or an attempt to commit, rape or kidnapping. Again, however, the trial court did not define the elements of these felonies. The jury's advisory verdict recommended a sentence of death but did not specify which aggravating factor(s) a majority of the jurors found to exist beyond a reasonable doubt. The trial court later specifically found that three aggravating factors had been proved: (1) the murder had occurred during the commission of, or an attempt to commit, rape or kidnapping, (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest, and (3) the murder was especially heinous, atrocious, or cruel. *See* Fla. Stat. §§ 921.141(5)(d), (e), (h).

■ We hold that the incomplete jury instruction did not so infect the entire sentencing proceeding that the penalty ultimately imposed violates the petitioner's due process rights. *See Henderson v. Kibbe, supra,* 431 U.S. at 154–55, 97 S.Ct. at 1736–37. However, we reject as a rationale for this holding the broad notion that the merely advisory role of the sentencing jury under Florida law renders *any* given error in a sentencing proceeding nonconstitutional in stature. This approach was recently noted but appropriately not followed by a panel of this Court in *Proffitt v. Wainwright,* 756 F.2d 1500, 1502 (11th Cir.1985) (citing *Spaziano v. Florida,* —— U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)).

■ The jury's role in an advisory sentencing proceeding is critical. A verdict recommending life imprisonment establishes an important set of parameters beyond which the trial judge may exercise his discretion in reaching a sentence of death only if "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." *Tedder v. State,* 322 So.2d 908, 910 (Fla.1975). Every error committed before the jury at a sentencing proceeding will have some *conceivable* effect on the jury's verdict and thus may affect the jury's determination of the guiding parameters for sentencing in the case. Every error in instruction which makes it less likely that the jury will recommend a life sentence to some degree deprives the defendant of the protections afforded by the presumption of correctness that attaches to a jury's verdict recommending life imprisonment. There may be a case in which a substantively incorrect instruction will mislead the jury to such an extent that the parameters created by the jury's verdict are so far off their proper mark that the instruction alone justifies reversal. An erroneous instruction may also provide convincing evidence that the trial judge himself misunderstood or misapplied the law when he later actually found and balanced aggravating and mitigating factors.

Not every error in instruction, however, will be so prejudicial as to require resentencing. An *incomplete* instruction is less likely to prejudice the defendant than one which is substantively incorrect. *See Henderson v. Kibbe, supra,* 431 U.S. at 155, 97 S.Ct. at 1737. The latter misstates the applicable law; the former is consistent with the applicable law but simply fails to

set it forth in full detail. Moreover, a claim of prejudice is particularly remote where the defendant did not object to the instruction's lack of completeness when the opportunity arose. *Id.* Such is the status of the petitioner's claim here. The jury instruction at sentencing was not substantively erroneous, just incomplete. The petitioner's counsel did not object or move for further instructions. The evidence fully supports the trial court's finding that the murder occurred during the commission of, or an attempt to commit, rape and kidnapping. Under these circumstances, the possibility that the jury would have reached a different verdict and thereby altered the sentencing parameters "is too speculative to justify the conclusion that constitutional error was committed." *Id.* at 157, 97 S.Ct. at 1738; *cf. Westbrook v. Zant,* 704 F.2d 1487, 1501 (11th Cir.1983) (Under Georgia law, and "[u]nder the facts in this case, the trial court was required to do no more regarding the applicable statutory aggravating factors than to repeat the exact statutory language.").

D. The Aggravating Factor of Murder Committed for the Purpose of Avoiding Arrest.

As noted previously, one of the three statutory aggravating factors found by the trial court to justify imposing the death penalty was that the petitioner had killed the victim in order to avoid or prevent his arrest. *See* Fla.Stat. § 921.141(5)(e). The facts enumerated by the trial court in support of this finding were: (1) actual or attempted kidnapping and rape had been proven, implying that the petitioner had reason to fear arrest, and (2) the murder prevented the victim from later identifying the petitioner. In affirming the sentence, the Florida Supreme Court added: (1) the victim knew the petitioner and could have identified him if permitted to live, and (2) the petitioner had hidden the victim's body.

*Adams v. State, supra,* 412 So.2d at 856. The district court below concluded: "The aggravating factor of avoiding arrest was not found in this case simply because the victim's body was hidden; [9] rather, the evidence supports the finding that death was preceded by kidnapping and rape and that the victim was murdered to prevent [the petitioner's] discovery and conviction for these felonies." *Adams v. Wainwright, supra,* No. 84–170–Civ.–Oc–16, Op. at 10–11.

Citing a recent Florida Supreme Court decision, *Doyle v. State,* 460 So.2d 353 (Fla. 1984), in which the court reversed a finding of this same aggravating factor in a rape-murder context, the petitioner asserts that no meaningful basis exists for distinguishing between cases involving a real avoidance motive for killing and cases not involving this motive. Without such a basis, argues the petitioner, the imposition of the death penalty in the present case, to the extent it is based on this aggravating factor, is arbitrary and hence unconstitutional. *See Godfrey v. Georgia,* 446 U.S. 420, 427–28, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976).

Like this case, *Doyle* involved sexual battery and murder of a victim who knew the defendant. The trial court found as aggravating factors that the murder was committed both in the course of sexual battery, *see* Fla.Stat. § 921.141(5)(d), and in order to avoid lawful arrest, *see* Fla.Stat. § 921.-141(5)(e). In holding that the State had not proved the latter aggravating factor beyond a reasonable doubt, the Florida Supreme Court stated in *Doyle:* "It is a tragic reality that the murder of a rape victim is all too frequently the culmination of the same hostile-aggressive impulses which triggered the initial attack and not a reasoned act motivated primarily by the desire

---

9. The petitioner's attempt to conceal the victim's body by placing it in plastic bags and depositing it in a remote area, a fact the Florida Supreme Court relied upon in affirming the trial court's finding, is too ambiguous to comprise a part of our rationale for holding that the State proved beyond a reasonable doubt that the petitioner committed the murder in order to avoid detection. Concealment of the body is as much evidence of an intent to avoid detection of the murder as it is evidence of an intent to avoid detection of actual or attempted rape and kidnapping.

to avoid detection." *Doyle v. State, supra,* 460 So.2d at 358. Based on this statement, the petitioner argues that the victim's death in this case resulted from an impulsive manual strangulation which was an integral part of the attempted rape of the victim and not a reasoned act motivated by a desire to avoid detection and arrest.

In essence, the petitioner's argument is that by finding the aggravating factor, killing during the commission of actual or attempted rape, a trial court is prevented from finding as an additional aggravating factor that the killing was motivated by a desire to avoid detection and prevent arrest. *Doyle,* however, did not hold that these two aggravating factors were mutually exclusive in every case involving both murder and rape. Indeed, the *Doyle* court implied otherwise by holding that, based on the facts in the record of that case, the State simply had not proven an avoidance motive beyond a reasonable doubt. The *Doyle* court rejected the State's attempt to prove this factor by drawing weak inferences from the victim's ability to identify the defendant as her rapist and from the likelihood that a five-year suspended sentence of the defendant for a prior offense would be reimposed if he were arrested and convicted of rape.[10] Thus, as we interpret *Doyle,* proof of murder while committing actual or attempted rape will not invariably preclude a finding that the defendant acted on a premeditated desire to kill in order to avoid detection and prevent arrest. The two aggravating factors can co-exist if both are proven beyond a reasonable doubt. Proof that the petitioner's reasoned acts in this case were motivated by a desire to avoid detection does not require an unacceptable reliance on inferences or assumptions. The petitioner's own written confession states that he put his hand over the victim's mouth to silence her screaming, and she quit breathing.

■ Moreover, unlike *Doyle,* the present case involves a charge of kidnapping as well as rape. The type of hostile-aggressive impulses associated with rape are not as readily implicated in a kidnapping case. The rape and murder in *Doyle* occurred as part of a single incident of impulsive violence committed at one location. Under these circumstances, the court was appropriately skeptical of the State's attempt to infer an avoidance motive for killing from the simple fact that a rape had occurred. By contrast, the kidnapping here involved transportation of the victim from one location to another and entailed the commission of deliberate acts to avoid detection.[11] These acts resulted in the victim's death. Killing during the commission of kidnapping and killing motivated by a desire to avoid detection of the kidnapping can comprise separate aggravating factors in the same case.[12] *See, e.g., Stevens v.*

**10.** *See also Rivers v. State,* 458 So.2d 762, 765 (Fla.1984) (requiring "direct evidence as to motive or at least very strong inference from the circumstances"); *Menendez v. State,* 368 So.2d 1278, 1282 (Fla.1979) (That murder weapon was fitted with a silencer, the purpose of which was to minimize detection, did not clearly show the dominant motive for killing was to avoid arrest by eliminating a witness to a robbery; where events preceding the actual killing are unknown, court will not assume defendant's motive; the burden was on the state to prove it.).

**11.** The jury verdict at the guilt-innocence phase of the trial is consistent with this conclusion since, as we have already held, the verdict rested solely on the jury's finding that the petitioner had murdered the victim in a premeditated fashion. *Cf. Rivers v. State, supra,* 458 So.2d at 765 (fact that jury found defendant guilty of felony murder, not premeditated murder, supported reversal of trial court's finding that the murder was committed for the purpose of avoiding lawful arrest).

**12.** We do not suggest, however, that in every case in which the State alleges and proves kidnapping in addition to rape the trial court can mechanically find, as an aggravating factor, killing in order to avoid detection and prevent arrest. Under a literal reading of Florida's criminal statutes, sexual battery will nearly always entail at least the possibility of a kidnapping charge. *See* Fla.Stat. § 787.01(1)(a)(2) (defining "kidnapping" to include forcibly confining another person against his or her will with intent to commit a felony); Fla.Stat. § 794.011 (defining sexual battery and establishing it as a felony). Yet proof of kidnapping in a sexual battery case will not necessarily enable the State to avoid the effect of the Florida Supreme Court's holding in *Doyle.* The evidence must also show conclusively, as it did here, that the defendant did not kill as the result of a single

*State,* 419 So.2d 1058, 1064 (Fla.1982); *Card v. State,* 453 So.2d 17, 24 (Fla.), *cert. denied,* —— U.S. ——, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984).

### E. The Ineffective Assistance of Counsel Claims.

■ Finally, the petitioner raises an array of ineffective assistance of counsel claims,[13] alleging that his attorney failed: (1) to adequately investigate and present evidence of his mental incompetency to stand trial or be sentenced; (2) to object to a jury instruction which listed lesser degrees of homicide for which no evidence had been presented; (3) to develop and present in mitigation evidence of his mental condition at the time of the murder; (4) to object to an instruction at sentencing which did not inform the jurors of their ability to recommend life imprisonment even though mitigating factors were outweighed by aggravating factors; (5) to object to an instruction at sentencing which listed aggravating factors not supported by any evidence; and (6) to object to an instruction at sentencing which omitted the statement that a tie vote among jurors would mandate a recommendation of life imprisonment. We have reviewed the portions of the record relevant to each of these claims, and, applying the test announced by the Supreme Court in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we affirm the denial of habeas corpus relief on this ground. None of the claims involved both professional conduct that was unreasonable under the circumstances and a reasonable probability that, but for the challenged conduct, the result of the particular proceedings would have been different. *Id.* at ——, 104 S.Ct. at 2064–69, 80 L.Ed.2d at 693–99. The claims were argued in a cursory fashion in the briefs of both parties and deserve only summary treatment here.

First, neither the scope of the investigation of the petitioner's mental competency nor his attorney's decision not to pursue a claim of incompetency prejudiced the outcome of the petitioner's case.[14] Before trial, the petitioner's attorney arranged for an examination of the petitioner by a private psychiatrist for the purpose of determining whether an insanity defense could be proffered. This examination uncovered no basis for an incompetency claim. The petitioner did have difficulty remembering certain details concerning the murder, but his ability to participate meaningfully in his defense was not in such doubt that further examinations should have been undertaken. As we have already held, it appears from the record on appeal that even the petitioner's post-trial examinations fail to raise a real, substantial, and legitimate doubt as to his mental competency at the time of trial. Since the requisite doubt has not and apparently could not have then been raised, the attorney's conduct in investigating and his decision not to pursue a claim of incompetency did not result in prejudice.

Second, the attorney's failure to object to the instruction listing lesser degrees of homicide, apart from possibly being reasonable trial strategy, similarly did not prejudice the outcome of the petitioner's trial.

aggressive and impulsive sexual desire, but rather that an independent reasoned motive to avoid detection and arrest existed. Proof of this motive must be "very strong." *Riley v. State,* 366 So.2d 19, 22 (Fla.1978), *cert. denied,* 459 U.S. 1138, 103 S.Ct. 773, 74 L.Ed.2d 985 (1983); *Routly v. State,* 440 So.2d 1257, 1263 (Fla.1983).

**13.** See also *supra* notes 4 and 8.

**14.** With respect to his attorney's failure to pursue a claim of incompetency, the petitioner characterizes the ineffective assistance inquiry as purely factual, thereby hoping to obtain an evidentiary hearing as required in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In *Strickland v. Washington,* however, the Supreme Court described the inquiry as "a mixed question of law and fact." —— U.S. at ——, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. Thus, the need for an evidentiary hearing does not arise unless there exists a genuine dispute as to the underlying, operative facts. Here, what the petitioner's attorney did and did not do both in investigating and deciding not to pursue an incompetency claim are not genuinely in dispute. Nor has the petitioner created in this appeal an unresolved issue of fact concerning the results of his post-trial psychological examination. The State's assertion that these results do not speak to the petitioner's competency at the time of trial and sentencing stands unrebutted.

It would certainly have been reasonable for the attorney not to object and instead to hope that, if the jury returned a guilty verdict, this verdict would be based on one of the lesser degrees of homicide listed. In any event, no prejudice resulted from the inclusion of these lesser degree crimes as part of the instruction, and hence no prejudice resulted from the attorney's failure to object. In reaching this holding, we are aware that Florida's rules of criminal procedure have been altered since the date of the petitioner's trial to require a trial court to charge only on lesser degrees that are supported by the evidence. *See In re Florida Rules of Criminal Procedure,* 403 So.2d 979 (Fla.1981); Fla.R.Crim.P. 3.490. The petitioner claims that, under the old rules, instructing on lesser degree homicides not supported by the evidence invited jurors to disregard their oaths at the guilt-innocence phase and arbitrarily find guilt of a lesser degree in some cases but not in others, depending upon whether they felt the death penalty was an inappropriate sentence. *See Roberts v. Louisiana,* 428 U.S. 325, 334–36, 96 S.Ct. 3001, 3006–07, 49 L.Ed.2d 974 (1976) (invalidating Louisiana statute that mandated death penalty whenever jury returned a guilty verdict of first degree murder). Under Florida's bifurcated procedures, however, a death sentence does not automatically follow a verdict of guilty in the first degree. As the jury in this case was expressly instructed, a separate sentencing hearing must be held and an advisory verdict rendered. Therefore, even under the old rules, jurors in Florida who were inclined to dispense mercy were not faced with the necessity of finding a lesser degree at the guilt-innocence stage in order to avoid ultimately imposing the death penalty. *See Hitchcock v. Wainwright,* 745 F.2d 1332, 1341–42 (11th Cir. 1984), *vacated,* 745 F.2d at 1348 (pending en banc review). The possibility that in another case the jury could, under similar circumstances, find a particular defendant guilty of a lesser degree of homicide and thus preclude any consideration of the death penalty for that defendant does not mean the petitioner in the present case was sentenced to death arbitrarily. The sen-

tencing phase of the petitioner's trial afforded him full opportunity to present mitigating evidence and pleas for mercy. Nevertheless, the jury recommended the death penalty. Not having been prejudiced by the instruction, the petitioner cannot claim that the outcome of his case would have been different had his attorney raised an objection.

Third, from a review of the record it is evident that the attorney did not fail to develop and present in mitigation evidence of the petitioner's mental condition at the time of the murder. As noted by the district court below, several witnesses, including a psychiatrist, testified in relation to the petitioner's state of severe emotional stress. Accordingly, the trial court found as one of three mitigating factors that the murder had been committed while the petitioner was under the influence of extreme mental or emotional disturbance. Clearly, then, the petitioner's attorney provided reasonably effective assistance of counsel on this issue.

Fourth, the attorney did not unreasonably fail to object to the instruction at sentencing on the basis that the trial court had neglected to inform the jurors of their ability to recommend life imprisonment even if mitigating factors did not outweigh aggravating factors. The petitioner claims the instructions incorrectly implied that, in order for the jury to recommend a life sentence, it would have to find mitigating factors to outweigh whatever aggravating factors it found to exist. *See Morgan v. Zant,* 743 F.2d 775, 779 (11th Cir.1984) (dicta). In actuality, however, the sentencing instructions given in this case neither expressly nor implicitly foreclosed the jury's ability to exercise mercy and recommend a life sentence even though no mitigating factors were present. To the contrary, after listing and defining the statutory aggravating factors enumerated in Florida's capital punishment statute, and *before* listing possible mitigating factors and describing their function generally, the trial court stated that the jurors were duty-bound to recommend a sentence of life imprisonment if, in their opinion, the aggra-

vating factors found were not "sufficient" to justify imposing the death penalty. That sufficient aggravating factors must exist before the death penalty could even be considered an appropriate sentence, thereby triggering the jury's consideration of mitigating evidence, was made clear by three additional references to this requirement elsewhere in the instructions. In sum, the sentencing instructions the trial court gave in this case would encompass the broadest exercise of a jury's discretion in mercifully recommending a life sentence. There simply was no such exercise of discretion here. *See Tucker v. Zant*, 724 F.2d 882, 891–92 (11th Cir.1984); *Westbrook v. Zant, supra*, 704 F.2d at 1502–03. Since the instruction was adequate, the failure of the petitioner's attorney to object did not deprive him of effective assistance of counsel.

Fifth, the attorney's failure to object to a jury instruction which listed aggravating factors not supported by any evidence did not prejudice the outcome of the petitioner's sentencing proceeding. The trial court enumerated all aggravating factors set forth in Florida's capital punishment statute. The petitioner claims this may have caused the jury to conclude that factors not supported by the evidence in fact existed. This claim is without merit. The jury is presumed to have followed the trial court's express instructions that each aggravating factor found and relied upon in recommending the death penalty be proved beyond a reasonable doubt and that only the evidence presented at the sentencing hearing be considered. The simple assertion that the court's listing of aggravating factors not supported by the evidence made these factors *appear* to be present and thus misled the jury into concluding that they were indeed present fails to overcome this strong presumption. Since the instruction itself did not result in prejudice, the attorney's failure to object did not constitute ineffective assistance.

Finally, the attorney's failure to object to an instruction which omitted the statement that a tie vote among jurors would mandate a recommendation of life imprisonment did not prejudice the outcome of the

sentencing proceeding. A similar claim was rejected by this Court in *Henry v. Wainwright*, 743 F.2d 761, 763 (11th Cir. 1984), because the defendant could not show that the jury was ever equally divided. Likewise, the petitioner here has not established that the jury was in fact split six-to-six. Bound by precedent, we hold that the instruction did not alter the outcome of the petitioner's sentencing proceeding and therefore no prejudice resulted from the attorney's failure to object.

The denial of petitioner's petition for writ of habeas corpus is AFFIRMED.