[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 898 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 899 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 900 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 901 
The appellant, Harry Nicks, was convicted of murder made capital because it was committed during a robbery, see §13A-5-40(a) (2), Code of Alabama 1975. Following the jury's recommendation, the trial court sentenced Nicks to death. His conviction and his sentence were affirmed on appeal. Nicks v.State, 521 So.2d 1018 (Ala.Cr.App. 1987), aff'd, 521 So.2d 1035
(Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916,101 L.Ed.2d 948 (1988). Nicks filed his initial post-conviction petition on January 17, 1989.[2] The petition was amended four times and the circuit court held two evidentiary hearings.[3] On August 13, 1997, the circuit court issued a written order in which it denied the requested relief as to Nicks's conviction but granted the relief as to his sentence, ordering a new sentencing hearing. The trial court found that because a prior conviction of Nicks's, which had been considered as an aggravating circumstance, had been set aside, Nicks was entitled to a new sentencing hearing in which the evidence of the vacated prior conviction would not be admitted. Nicks appeals the denial of his relief as to his conviction.
It is well settled that "the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." State v. Tarver, 629 So.2d 14, 19
(Ala.Cr.App. 1993); Brownlee v. State, 666 So.2d 91, 93
(Ala.Cr.App. 1995); Grayson v. State, 675 So.2d 516, 519
(Ala.Cr.App. 1995), cert. denied, 519 U.S. 934, 117 S.Ct. 309,136 L.Ed.2d 225 (1996). See also Horsley v. State, 675 So.2d 908, 909
(Ala.Cr.App. 1996) (in which this court, in an appeal of denial of the appellant's Rule 32, Ala.R.Crim.P., petition in a death penalty *Page 902 
case, held that the circuit court properly applied the procedural bars set out in Rule 32.2).
In Nicks v. State, Judge Patterson, writing for this Court, set forth the facts surrounding the underlying crime:
 "This case arises out of an incident which occurred on March 5, 1983, in the Bessemer Pawn Shop at 315 N. 19th Street, Bessemer, Alabama. The pawn shop was owned and operated by Robert and Isadore Back. At approximately 2:30 p.m., a black male entered the shop. He was wearing a red vinyl jacket, blue jeans, and a clear plastic shower cap on his head. He had acne scars on the right side of his face. He was carrying a red canvas tote bag which had a white shoulder strap. Robert Back and an employee, Debra Lynn Love, were in the shop at the time. The man approached Back and said, `Man, I need some money. I got to get out of town quick.' He then pulled a pistol from the tote bag, pointed it at Back, and told Love not to move. Back took money from a cash drawer and put it in the tote bag. The robber demanded more money. He demanded `big bucks,' and continuously called Back a `god damned old man' and `mother fucking old man.' He threatened to kill Back and pulled a second pistol from the bag. Back took money from a second cash drawer and put it in the bag. The robber demanded more money. He wanted `big bucks' and `big bills.' He ordered Love to lie on the floor and she complied. Back opened the cash drawer in the safe and handed more money to the robber and told him, `This is all I have.' The robber ordered Back to lie next to Love on the floor. As Back and Love lay face down on the floor, the robber fired three shots. One shot entered the back of Love's head; one entered the back of Back's head, penetrating his brain; and one went into a rubber mat on the floor. Back either died instantly or in a matter of minutes from the bullet wound to his head; however, the bullet fired into love's head lodged in her skull and she survived. As soon as Love heard the robber leave the shop, she telephone the police, giving them a detailed description of the robber.
 "Subsequently, Love identified appellant, in two lineups conducted by the police, as the person who robbed the pawn shop and shot Back and her. She also made a positive in-court identification of appellant.
 "Venita Bishop was working as a cashier in a nearby store on the date of the incident. She observed a black male, fitting the description of the robber, in her store around 12:30 to 12:45 p.m. Subsequently, she identified appellant, in a lineup, as the person she observed in the store where she worked on the day of the incident. She also made a positive in-court identification of appellant.
 "A firearms expert determined that two of the bullets fired by the robber were .22 caliber and fired from the same gun. The two pistols displayed by the robber were never found. The autopsy performed on Back's body disclosed stippling, or powder burns, around the wound to the back of his head, indicating that the pistol from which the shot was fired was very close to his head, probably within two inches.
 "Appellant did not testify in his own behalf during the guilt phase of the trial. He called only two witnesses: Dr. Clifford B. Hardin, a psychiatrist, and Gordon Burkhead, his landlord, in support of his insanity plea."
521 So.2d at 1020-21.
On August 18, 1997, the circuit court entered its order denying Nicks's petition as to his conviction, but granting Nicks's *Page 903 
request for a new sentencing hearing. (C. 542-44.)
In its order, the circuit court found that the following claims raised in the petition were precluded by Rule 32.2(a) (3) and/or (a) (5), Ala.R.Crim.P., as claims that could have been, but were not, raised at trial and/or on appeal, respectively[4]:
 "A. The prosecution's and the court's references to the jury's verdict at the penalty phase as an `advisory opinion' or `advisory verdict' violated petitioner's constitutional rights as stated in Caldwell v. Mississippi, [472 U.S. 320
(1985)].
 "B. Petitioner was deprived of a fair trial in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama by the prosecutor's use of peremptory challenges in a racially discriminatory manner.
". . . .
 "E. At the penalty phase of the petitioner's trial, petitioner was denied his opportunity to present evidence of mitigating circumstances in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution because the state failed to provide him with the services of an independent and competent psychiatrist.
 "F. The trial court's denial of the motion for continuance deprived the petitioner of his rights under the Sixth, Eighth and Fourteenth Amendments at the penalty phase.
 "G. During the penalty phase, the trial court incorrectly shifted the burden of proof of mitigating circumstances and placed it on petitioner in violation of the Laws and Constitution of Alabama and the Eighth and Fourteenth Amendments to the United States Constitution.
". . . .
 "M. The prosecutor's misconduct and arguments at the penalty phase of petitioner's trial were improper and deprived petitioner of a fundamentally fair hearing and due process in violation of petitioner's Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama.
 "N. The prosecutor's misconduct and arguments at the guilt/innocence phase of petitioner's trial were improper and violated rights guaranteed to the petitioner by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama.
". . . .
 "Q. Petitioner was deprived of an impartial jury through improper juror exclusion in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama.
 "R. Petitioner was placed in a lineup in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama.
 "S. Petitioner was denied due process as guaranteed by the Laws and Constitution of Alabama and the Eighth and Fourteenth Amendments to the United States Constitution by the admission of evidence obtained in an unconstitutionally tainted lineup.
". . . .
 "U. Petitioner was denied a fair trial by the court's failure to instruct the jury that the credibility and weight of the testimony of any witness is to be determined *Page 904 
by the jury, and to correct the prosecutor's assertions concerning the credibility of the witnesses to the jury in its closing arguments.
 "V. Alabama's death penalty was arbitrarily and discriminatorily applied in this case in violation of the Eighth and Fourteenth Amendments.
". . . .
 "X. The court's failure to give a lesser included offense instruction resulted in an unconstitutional and illegal capital conviction and sentence of death.
 "Y. The failure of the court to fully transcribe the trial court proceedings deprived petitioner of full appeal and statutorily mandated review of his capital sentence and conviction.
 "Z. Alabama's sentencing statute which requires only ten affirmative votes for death and where the jury's verdict is `advisory' deprived the petitioner of the high degree of reliability required in death sentencing procedures under the Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama.
 "AA. The trial court erroneously placed the burden of persuasion on mental insanity on the defendant in violation of Alabama law and the Fifth and Fourteenth Amendments to the Constitution.
". . . .
 "CC. Application of the death penalty and execution of mentally ill persons, such as petitioner, violates the United States Constitution and the State Constitution of Alabama.
". . . .
 "EE. Petitioner was deprived of a fair trial in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the Laws and Constitution of Alabama because the state withheld material exculpatory information."
The circuit court found the following claims to be precluded by Rule 32.2(a) (2), Ala.R.Crim.P., because they were raised or addressed at trial:
 "C. The trial court's denial of the petitioner's motion for a continuance to obtain and analyze thoroughly petitioner's psychological records violated his rights to due process under the Laws and Constitution of Alabama and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution by depriving him the opportunity to adequately prepare and present his defense.
 "D. The state failed to provide petitioner with the services of an independent and competent psychiatrist in violation of Ake v. Oklahoma.
". . . .
 "I. Petitioner was deprived of a fair trial and sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution because Petitioner was unable to understand the proceedings against him or to assist counsel with his defense.
". . . .
 "O. Petitioner's right to a fair trial by an impartial jury under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated by the trial court's failure to grant a change of venue.
 "P. Petitioner was deprived of an impartial jury by the court's failure to quash the unconstitutionally composed venire in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama.
". . . .
 "BB. The state's introduction of prejudicial and inflammatory diagrams and photographs at petitioner's trial violated petitioner's rights to a fair trial and due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the *Page 905 
united States Constitution and the Constitution of Alabama.
". . . .
 "DD. Petitioner's rights to a fair trial by an impartial jury were violated by the trial court's failure to grant defendant's motion to examine all prospective jurors on voir dire."
The circuit court found that the following claims were precluded by Rule 32.2(a) (4), Ala.R.Crim.P., because they were raised or addressed on appeal:
 "H. In violation of the Laws and Constitution of Alabama and the United States Constitution, petitioner was deprived of a fair penalty phase of the trial by the court's failure to find, in the face of overwhelming evidence, the mitigating factors concerning his mental impairment.
". . . .
 "L. The admission of unadjudicated collateral act evidence at the penalty phase of the capital trial violated the evidentiary requirements of the Eighth and Fourteenth Amendments.
". . . .
 "W. Petitioner was denied a fair trial in violation of the Constitution of Alabama and the Eighth and Fourteenth Amendments to the United States Constitution by the introduction and the continual discussion of an unadjudicated collateral act."
Further, in its order, the circuit court addressed the other claims in Nicks's petition, as follows:
 "4. In Paragraph T the Petitioner alleges that he is entitled to new penalty phase of his trial because a prior conviction introduced as an aggravating circumstance has been set aside. The Court finds that this allegation is supported by the evidence and that he is entitled to a new penalty phase in which this evidence will not be admissible.
 "5. In Paragraph J, Petitioner alleges he did not receive effective assistance of counsel in violation of his rights guaranteed by the laws and Constitution of Alabama, and Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 "This allegation is not supported by the evidence before the Court. Appellate counsel chose to focus on [the] strongest issue. This issue was that the trial court erred in allowing evidence of collateral crimes or acts as a part of the state's case in chief. Appellate counsel's failure to raise the arguments suggested by his counsel in this post conviction remedy does not make his representation ineffective. Appellate counsel met the standard required by law.
 "6. In Paragraph K, Petitioner alleges he did not receive effective assistance of trial counsel, in violation of his rights guaranteed by the laws and Constitution of Alabama, and the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.
 "Jadd Fawwal and Carl Wade Robinson represented the Petitioner at trial. As counsel admits in their brief, both of these attorneys are experienced and competent trial attorneys. Both have a great deal of experience and expertise in the field of criminal law and enjoy a good reputation with the Bench and Bar of this jurisdiction. Counsel prepared for trial and presented Mr. Nicks's case in a competent manner.
 "A number of counsel's allegations are directed to [trial] counsel's performance in the penalty phase of his trial. Because of the court's ruling concerning the allegations of Paragraph T, and because Petitioner is being afforded a new penalty phase, these issues are moot.
 "Petitioner alleges that trial counsel was ineffective in the jury selection process. *Page 906 
The evidence presented indicates that the defendant could have made out at least a prima facie case that the State used peremptory challenges to improperly exclude blacks from Petitioner's jury by what is generally referred to as a Batson
motion. However, [Nicks's] trial preceded Batson. Trial counsel was not ineffective by failing to make a record upon which this claim could later be raised, and was not ineffective for failing to object to this under the state of the law at the time of trial, and for not challenging the prosecution's peremptory strikes at trial.
 "The remaining allegations in Paragraph 51 are merely ways of saying that present counsel would have tried this case differently than did trial counsel.
 "Counsel further alleges that this court erred by failing to hold a hearing on Nicks's competency to stand trial. As the trial judge in this case I acknowledge my responsibility to determine whether or not a defendant is competent to stand trial. In this case the evidence before the court at trial, including reports of experts and the court's observation of Mr. Nicks on this and other occasions, led me to believe that the defendant was competent to stand trial. As the evidence reflects, I was unaware that Nicks had been prescribed significant doses of lithium. However, there was still a lack of evidence at the time of trial that caused me to question his competency to stand trial.
 "Having considered the assertions of the Petitioner in light of the totality of the evidence presented in this post-conviction hearing and the evidence addressed at trial, it is the judgment of this court that [trial and appellate] counsel for the Petitioner was not ineffective. Trial and appellate counsel met the standard of professional reasonableness. Petitioner has failed to show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.
 "Petitioner is entitled to a new penalty phase of his trial and he is not entitled to a new trial on the issue of his guilt."
(C. 542-44.)
On February 6, 1998, Nicks appealed the circuit court's denial of a new trial to determine his guilt. Initially, we note that Nicks abandons several claims on appeal. "`"[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned." United States v. Burroughs, 650 F.2d 595, 598 (5th Cir.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483
(1981).'" Brownlee v. State, 666 So.2d at 93, quoting Burks v.State, 600 So.2d 374, 380 (Ala.Cr.App. 1991). This is true even in an appeal from the denial of a Rule 32 petition in a death penalty case. There is no plain error review in an appeal from a Rule 32 petition. See Payne v. State, [Ms. CR-97-2508, July 9, 1999] ___ So.2d ___ (Ala.Cr.App. 1999). Accordingly, we will address only those claims Nicks presents to this Court.
 I.
Nicks claims that the circuit court erred in denying his Rule 32 petition because, he says, the circuit court failed to hold a hearing to determine his competency to stand trial, despite what he says was sufficient evidence that he was incompetent to stand trial. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815 (1966). Nicks, in support of this claim, also makes the following arguments:
 A. That the court had a continuing obligation to conduct a competency hearing at any point during trial at which a "bona fide" doubt as to his competence to stand trial surfaced;
 B. That Alabama law required that any competency hearing be conducted in *Page 907 
front of a jury and that any competency determination be left to the jury;
 C. That the evidence of his lack of competence to stand trial was sufficient to require the circuit court to hold a competency hearing; and
 D. That the remedy for the circuit court's error is to hold a retrospective hearing on his competence to stand trial, or, if that is not practical, to vacate his conviction.
The state argues, and we agree, that this competency claim is procedurally barred by Rule 32.2(a) (3) and (5), Ala.R.Crim.P., as a claim that could have been, but was not, raised at trial or on appeal. See Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995) (stating "[a] Pate claim `can and must be raised on direct appeal'"). Cf. Matthews v. State, 671 So.2d 146 (Ala.Cr.App. 1995), and Dill v. State, 600 So.2d 343 (Ala.Cr.App. 1991) (each raising on direct appeal a trial court's failure to sua sponte order a Pate hearing); James v. Singletary, 957 F.2d 1562 (11th Cir. 1992) (holding that a Pate claim "can and must be raised on direct appeal"); and Thomas v. State, 766 So.2d 860 (Ala.Cr.App. 1998) (holding that whether the competency hearing was constitutionally inadequate and its results inherently unreliable was procedurally barred pursuant to Rule 32.2(a) (3) and (5), Ala.R.Crim.P.).
In his brief to this Court, Nicks maintains that an issue regarding the trial court's failure to conduct a competency hearing is not subject to procedural bar, even in a postconviction proceeding. In support of this claim, Nicks cites Adams v.Wainwright, 764 F.2d 1356 (11th Cir. 1985), cert. denied,474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986), and Roy v. State,680 So.2d 936 (Ala.Cr.App. 1996). However, the present case is distinguishable from those cases.
In Adams, the petitioner, at trial, declined to seek a mental examination, even though the Florida court had granted his trial counsel's motion for such an examination. Later, a presentence report attributed a statement to Adams's trial counsel that cast doubt on Adams's mental competence at trial and at sentencing. Apparently, this issue was raised only in postconviction proceedings, and the Florida Supreme Court held that, although no evidentiary hearing was held regarding the incompetence issue, it was procedurally barred because it was not raised on appeal. 764 F.2d at 1358-59.
Although the United States Court of Appeals for the Eleventh Circuit affirmed the district court's denial of Adams's petition for the writ of habeas corpus, it wrote:
 "Binding precedent fully supports the petitioner's contention that the procedural default rule of Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), does not operate to preclude a defendant who failed to request a competency hearing at trial or pursue a claim of incompetency on direct appeal from contesting his competency to stand trial and be sentenced through post-conviction proceedings. See Zapata v. Estelle, 588 F.2d 1017, 1021 (5th Cir. 1979); Nathaniel v. Estelle, 493 F.2d 794, 798 (5th Cir. 1974); Bruce v. Estelle, 483 F.2d 1031, 1037 (5th Cir. 1973). Indeed, as the Supreme Court stated in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), `it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial.' Id. at 384, 86 S.Ct. at 841; Zapata v. Estelle, supra, 588 F.2d at 1021; Bruce v. Estelle, supra, 483 F.2d at 1037. Therefore, the district court below erred in holding that the petitioner was procedurally barred from pursuing *Page 908 
a claim of mental incompetency in a federal habeas corpus proceeding."
764 F.2d at 1359.
Similarly, in Roy v. State, this court held that the trial court denied the defendant his due process right and the right to a fair trial when it rescinded its order authorizing a psychiatric evaluation based on the defendant's objection to the evaluation and on his insistence that he was sane; without the evaluation, defendant's counsel was unable to pursue an insanity defense based on intoxication or to present possibly mitigating evidence and, thus, was unable to represent the defendant effectively. 680 So.2d at 937-39, 941-42.
Adams and Roy presented situations in which the defendant had affirmatively waived his right to a mental examination, an act which courts in many jurisdictions have held a defendant may not do. See Roy v. State, 680 So.2d at 938-39. The present case, however, sits in a completely different posture — Nicks in this case was examined and was treated at Taylor Hardin Secure Medical Facility. The pretrial proceedings and his trial were continued until the Lunacy Commission determined that he was competent to stand trial. Nicks did not waive a mental examination. Because Nicks did not properly raise this issue in the trial court or on appeal, the procedural bars set out in Rule 32.2(a), Ala.R.Crim.P., preclude further review of this claim. The circuit court did not err in denying Nicks's petition regarding this claim.
 II.
Nicks argues that the circuit court erred in denying his petition because, he says, his trial violated his right to due process in that he was, he says, incompetent at the time of his trial. The circuit court in its order held that this claim was precluded because it was raised and addressed at trial, but was not raised on appeal. See Rule 32.2(a) (5), Ala.R.Crim.P. To the extent that this claim raises the issue whether Nicks's procedural due process rights were violated, Nicks's claim is procedurally barred because it could have been raised on appeal. Rule 32.2(a) (5), Ala.R.Crim.P.
To the extent, however, that Nicks's claim raises a substantive due process claim — i.e., that he was tried and convicted while he was mentally incompetent — the claim is not subject to procedural bars.[5] See Nguyen v. Reynolds,131 F.3d 1340, 1346 (10th Cir. 1997), cert. denied, 525 U.S. 852,119 S.Ct. 128, 142 L.Ed.2d 103 (1998). Medina v. Singletary, supra. However, although the circuit court gave an incorrect reason for denying Nicks's petition with regard to this substantive due process claim, we need not reverse its judgment. "If the circuit court's ruling denying a post-conviction petition is correct for any reason, we will not reverse simply because the circuit court stated an incorrect reason for denial." Pierce v. State, [Ms. CR-96-1668, March 2, 1999] ___ So.2d ___, ___ (Ala.Cr.App. 1999). Because we conclude that Nicks was competent to stand trial and has failed to show his incompetency by a preponderance of the evidence, we are not required to reverse the circuit court's judgment with regard to this substantive claim.
 "A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. In contrast to a procedural competency claim, however, `a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must *Page 909 
demonstrate his or her incompetency by a preponderance of the evidence.' A petitioner who presents `clear and convincing evidence' creating a `real, substantial and legitimate doubt' as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim."
Medina v. Singletary, 59 F.3d at 1106.
 "A defendant's `"competency to stand trial refers to a defendant's current mental state and functional capacities as they relate to a pending trial process."' Committee Comments on Rule 11.1, quoting T. Grisso, Evaluating Competencies.
 "`"Ala. Code 1975, § 15-16-21, provides in pertinent part:
 "`"`If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity. . . .'
 "`"This section authorizes the trial court to make a preliminary determination (without the aid of a jury) as to whether there are reasonable grounds to doubt the defendant's competency to stand trial. Ex parte LaFlore, 445 So.2d 932, 934
(Ala. 1983); Richardson v. State, 354 So.2d 1193, 1196 (Ala.Cr.App. 1978). The trial court is, thus, the `screening agent' for mental examination requests. Livingston v. State, 419 So.2d 270, 274 (Ala.Cr.App. 1982)."
 "`Reese v. State, 549 So.2d 148, 150 (Ala.Cr.App. 1989), overruled on other grounds, Huntley v. State, 627 So.2d 1013 (Ala. 1992). . . .
"Rule 11.1, Ala.R.Crim.P., states:
 "`"A defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant."
 "`The trial court makes the ultimate determination of a defendant's competency pursuant to the following standard:
 "`"The test for determining competency to stand trial is whether the defendant `has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.' Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)."
 "`Anderson v. State, 510 So.2d 578, 579
(Ala.Cr.App. 1987). This determination [of competency to stand trial] should be left to the discretion of the trial court.' Baker v. City of Huntsville, 516 So.2d 927, 931 (Ala.Cr.App. 1987).'
 "Russell v. State, 715 So.2d 866, 868-69 (Ala.Cr.App. 1997). (Emphasis added.)"
Frazier v. State, 758 So.2d 577, 584-86 (Ala.Cr.App. 1999). Factors for the trial court to consider in determining whether a defendant is competent to stand trial include:
1. Any evidence of irrational behavior by the defendant;
2. The defendant's demeanor at trial; and
3. Any prior expert opinion on his competency to stand trial.
Ex parte Gordon, 556 So.2d 363 (Ala. 1988). See Fallada v. Dugger,819 F.2d 1564 (11th *Page 910 
Cir. 1987); and Thomas v. Kemp, 796 F.2d 1322 (11th Cir.), cert. denied, 479 U.S. 996, 107 S.Ct. 602, 93 L.Ed.2d 601
(1986). Additionally, our review is limited to what the trial court knew at the time of trial. See Thomas v. Kemp, supra.
As noted in Part I of this opinion, the trial court was acutely aware of Nicks's mental state. In its order denying Nicks's Rule 32 petition, the circuit court stated:
 "As the trial judge in this case I acknowledge my responsibility to determine whether or not a defendant is competent to stand trial. In this case the evidence before the court at the trial, including the reports of experts and the court's observation of Mr. Nicks on this and other occasions, led me to believe that the defendant was competent to stand trial. As the evidence reflects, I was unaware that Nicks had been prescribed significant doses of Lithium. However, there was still a lack of evidence at the time of trial that caused me to question his competency to stand trial."
(C.R. 544.) (Emphasis added.) The circuit court's findings are supported by the record.
Our review of the record indicates that on April 14, 1983, the trial court issued the following order:
 "WHEREAS, the Defendant, Harry Nicks, is in confinement in the County Jail of Jefferson County, Alabama, being held under indictments returnable to Jefferson County Circuit Court, charging him with six felonies, one being a capital offense, and WHEREAS it appears to this Court that he may be mentally incompetent and in need of a psychiatric and neurological evaluation, and this Court has instituted a careful investigation of Defendant's mental condition, has received a letter and report from Dr. John Callahan, Psychiatrist; the testimony of Mrs. Donna Click, Psychiatric Social Worker, the Court is of the opinion that Defendant may be mentally incompetent or may have been suffering from a mental disease or defect at the time of the alleged crimes on March 5, 1983, and March 15, 1983, and in need of psychiatric and neurological evaluation. This is not a finding by this Court of Defendant's mental condition or incompetency.
 "NOW, THEREFORE, it is by the Court ORDERED that the Sheriff of Jefferson County discharge Defendant from said imprisonment in this County Jail and safely remove him to the Bryce Hospital for the Insane at Tuscaloosa, Alabama, and deliver the person of the Defendant to the superintendent of said hospital where said superintendent and all other proper officers of said hospital are ORDERED and DIRECTED to keep Defendant in safe custody until he is examined and evaluated on the following subjects:
 "(1) Is Defendant at the time of evaluation and examination competent to stand trial?
 "(2) Was Defendant on or about March 5 and March 15, 1983 (the times of the alleged felonies), suffering from mental disease or defect?
 "After these questions have been answered, the superintendent is DIRECTED to make a written report of its findings to this Court."
(R. on Nicks's direct appeal, Vol. V, pp. 5-6.)
On May 17, 1983, Larry Strickland, the director of the Competency Evaluation Board at Taylor Hardin Secure Medical Facility, reported to the trial court that it was "the opinion of the Competency Evaluation Board as well as the members of the Lunacy Commission, that Mr. Nicks [was] acutely symptomatic and would be substantially impaired in terms of his ability *Page 911 
to assist counsel or to meaningfully participate in trial proceedings." (R. on Nicks's direct appeal, Vol. V, pp. 18.) The Lunacy Commission and the Competency Evaluation Board further recommended that the trial court order that Nicks receive immediate treatment. Based on their recommendation, the trial court had Nicks transferred to the treatment unit and treatment was initiated. (R. on Nicks's direct appeal, Vol. V, pp. 18-9.)
On September 19, 1983, Strickland informed the trial court:
 "Upon the admission of Mr. Nicks to the Taylor Hardin Secure Medical Facility, the following three (3) medical experts were appointed to constitute the undersigned commission: Florinio s. Samson, M.D., Psychiatrist, Bryce Hospital, Clifford B. Hardin, M.D., Psychiatrist, Bryce Hospital, and Alexander A. Salillas, M.D., Psychiatrist, Bryce Hospital. Following the initial review by the Lunacy Commission, it was the collective opinion of the commission members that Mr. Nicks was not competent to stand trial at that time and thus, was in need of treatment to restore his competency. Mr. Nicks's initial psychiatric symptoms included pressure of speech, hyperactivity, hypomanic symptoms, loose associations, grandiosity, demanding and auditory hallucinations. Following the administration of prescribed treatment, Mr. Nicks's mental status began to improve significantly. After his improvement, Mr. Nicks was again reviewed by the Lunacy Commission members.
 "Dr. Florinio Samson, Psychiatrist, is of the opinion that, following the administration of medication, Mr. Nicks's previous psychotic symptoms are now in fairly good remission, although Dr. Samson noted that Mr. Nicks continued to display a generally blunted affect. In Dr. Samson's opinion, Mr. Nicks's speech was spontaneous; Mr. Nicks no longer exhibited pressured speech or looseness of associations. Dr. Samson is currently of the opinion that Mr. Nicks is presently competent to stand trial and assist his attorney in preparing his defense. Regarding Mr. Nicks's probable mental state at the time of the alleged offenses, Dr. Samson did not render a definitive opinion concerning Mr. Nicks's criminal responsibility at the time of the alleged offenses. However, Dr. Samson did note that on questioning, Mr. Nicks denied any hallucinations or delusions at the time of the alleged offenses, maintaining that he (Nicks) was at home with a witness during the alleged offenses.
 "Dr. Clifford B. Hardin, Psychiatrist, is of the opinion that Mr. Nicks is now presently competent to stand trial. Mr. Nicks has a rational as well as factual understanding of the charges pending against him and, in Dr. Hardin's opinion, Mr. Nicks can communicate with his attorney with a reasonable degree of rational understanding. At the time of the alleged offense, Dr. Hardin is of the opinion that Mr. Nicks was not so affected with a mental disease, defect or derangement which would have substantially impaired his ability to appreciate the criminality of his conduct or prevent Mr. Nicks from conforming his conduct to the requirements of the law.
 "Dr. Alexander A. Salillas, Psychiatrist, is of the opinion that Mr. Nicks is now presently competent to stand trial. In Dr. Salillas's opinion, Mr. Nicks now understands the nature of the charges pending against him and Mr. Nicks can communicate with his attorney with a reasonable degree of rational understanding. Base on Mr. Nicks's account of his actions at the time of the alleged offenses and based on a review of all data gathered during Mr. Nicks's admission to the Taylor Hardin Secure Mental Facility, Dr. Salillas is of the opinion *Page 912 
that, at the time of the alleged offenses, Mr. Nicks was not so affected with a mental disease or mental defect which would have substantially impaired his ability to appreciate the criminality of his conduct or prevent Mr. Nicks from conforming his conduct to the requirement of the law."
(Supp. R. 9-10.) Only after receipt of this report from the Lunacy Commission did the trial court proceed with Nicks's trial. Nicks did not raise the issue of his competency to stand trial to the trial court again. We note that on March 13, 1984, approximately two months before Nicks's trial, the trial court conducted a pre-trial discussion with Nicks about his request to hire his own attorney. That discussion indicates that Nicks was able to effectively communicate and understand the proceedings.[6] (R. on Nicks's direct appeal at 12-13.)
We have reviewed the entire record on direct appeal. At no time other than in the initial pretrial stages did Nicks or his counsel raise the issue of Nicks's competence to stand trial.
Therefore, the record and evidence before the trial court at the time of Nicks's trial does not support the conclusion that Nicks lacked the "ability to assist in his . . . defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against" him. "`"The trial court is in a far better position than the reviewing court to determine a defendant's competency to stand trial."' Matthews v.State, 671 So.2d 146, 148 (Ala.Cr.App. 1995), quoting Dill v.State, 600 So.2d 343, 371 (Ala.Cr.App. 1991), aff'd, 600 So.2d 372
(Ala. 1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293,122 L.Ed.2d 684 (1993). Consequently, Nicks has failed to show his incompetence by a "real, substantial doubt." See Medina v.Singletary, supra.
In support of his claim, Nicks argues that the state's administration of what he says was a toxic dosage of lithium to Nicks three days before his trial creates substantial doubt at to his "ability to consult with his lawyer with a reasonable degree of rational understanding." (Nicks's brief to this Court at p. 11.) Our review of the record on direct appeal, as well as the evidence presented during the Rule 32 hearing, convinces us, however, that Nicks was competent to stand trial. Nicks's trial counsel testified at the Rule 32 hearing that he informed Nicks before trial that the best way for the two of them to communicate during trial was through notes. Nicks's trial counsel testified that during the first few days of the trial Nicks seemed anxious and communicated with them by writing notes. Nicks's trial counsel stated:
 "[Nicks] knew what was going on. He knew that the jury was out there, and who the judge was. And he sat through voir dire pretty well with a few notes. And I think as we got into the trial his mannerisms changed to some degree.
 "He became less agitated and more really a blank stare more than anything else. And not much eye contact with I or Mr. Robinson after the first day and a half."
(R. 43.) Although Nicks's trial counsel stated that as the trial progressed Nicks seemed to lose interest and to develop a blank, noninterested stare, we do not consider such behavior to be irrational or his demeanor particularly unusual.
Additionally, we note that Nicks testified during the penalty phase of the trial, which *Page 913 
was held on May 25, 1984, four days after a toxic level of lithium was found in Nicks's blood. Nicks's testimony indicates that he was able to understand the questions asked of him and to answer those questions. He was aware of his past, including where he had lived before his incarceration, his medical history, and his prior criminal history. Nicks denied that voices caused him to be violent and he attempted to negate the identifications of the eyewitnesses by describing his typical appearance and attire. (R. on direct appeal at pp. 760-73.) Based on our review of the record on direct appeal and the record of the Rule 32 hearing, we conclude that Nicks has failed to prove by a preponderance of the evidence his claim that there was sufficient evidence before the trial court to require an additional competency determination.
We further reject Nicks's claim that his trial counsel's testimony during the Rule 32 hearing established that he was incompetent to stand trial. His trial counsel testified that when he met with Nicks to prepare for trial there were times when Nicks was cognizant, cooperative, and helpful, and there were other times when he was reticent, distracted, and combative. Nicks's trial counsel admitted that he was unable to obtain any facts about the case because Nicks adamantly maintained that he did not commit the charged offense and, consequently, that he did not know any details. Nicks's trial counsel further testified that when he questioned Nicks about Guicy Horn, Nicks's accomplice, Nicks's "primary response was that Guicy was setting him up and Guicy had plenty of physical evidence [that he planted] and was doing it for the reward." (R. 25.) According to his trial counsel's testimony, Nicks's offered minimal assistance in creating a defense, but he was able to provide the name of his landlord, who was called as a witness and to assist in providing information to support the insanity plea. His counsel testified that from the time of his appointment to Nicks's case to the trial, Nicks became more cooperative and more coherent. The testimony of Nicks's trial counsel and the record reflect that when Nicks wanted to, he was cooperative and able to communicate and to act appropriately. While Nicks's lack of involvement or boredom during trial may have not been in his best interest, the record does not support the conclusion that he was incompetent.
Finally, although Nicks's Rule 32 counsel did establish that Nicks had a history of mental illness, we do not find that history automatically indicates that he was incompetent to stand trial. As we noted in Thomas v. State, 766 So.2d 860, 881-82
(Ala.Cr.App. 1998):
 "[T]he law is clear that `proof of the incompetency of an accused to stand trial involves more than simply showing that the accused has mental problems or psychological difficulties.' Bailey v. State, 421 So.2d 1364, 1366
(Ala.Cr.App. 1982).
 "`"A distinction must be made between mental illness and mental incompetency to stand trial, and the fact that a defendant is mentally ill does not necessarily mean that he is legally incompetent to stand trial. Thus, not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence of defendant's mental unfitness must indicate a present inability to assist counsel or understand the charges."'
 "Cowan v. State, 579 So.2d 13, 15 (Ala.Cr.App. 1990) (quoting 22A C.J.S. Criminal Law § 550 (1989) (footnotes omitted)). . . . Lee v. Alabama, 406 F.2d 466, 471-72 (5th Cir. 1968) (`one may be suffering from a mental disease which is at the root of antisocial action and simultaneously have a rational and factual *Page 914 
understanding of court proceedings and be able to consult with a lawyer on a reasonably rational basis'), cert. denied, 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 1787 (1969); Committee Comments to Rule 11.1 (as amended effective October 1, 1996), Ala.R.Crim.P. (`Although some States require that the defendant's mental incompetence be attributable to a "mental disease or defect," the majority view is that the mere presence of a mental disorder, whatever its severity, is not a sufficient basis for a finding of incompetency to stand trial.')."
Accordingly, even in light of Nicks's history of mental illness and the newly discovered evidence that Nicks had been administered a toxic amount of lithium a few days before trial, Nicks has failed to establish a "real, substantial and legitimate doubt" that he was incompetent to stand trial.
 III.
Nicks contends that the "circuit court erred in deeming hisBrady claim[7] procedurally barred [because] the state did not raise that affirmative defense against the claim and the claim is based on information first uncovered during these collateral proceedings." (Nicks's brief to this Court at p. 11.) The circuit court held that Nicks's Brady claim was procedurally barred from review in a Rule 32 petition because Nicks did not raise the claim at trial or on appeal. The state concedes, however, in its brief to this Court and in oral argument, that it did not raise these particular grounds of preclusion. See Rule 32.3, Ala.R.Crim.P. (requiring the state to plead any ground of preclusion), and Ex parte Rice, 565 So.2d 606 (Ala.Cr.App. 1990). Therefore, the circuit court erred in applying this ground of preclusion because Nicks was not given notice so that he could attempt to "disprove [the ground of preclusion] by a preponderance of the evidence." Rule 32.3, Ala.R.Crim.P. However, because we reject Nicks's claims based on the merits (see Part IV of this opinion), we are not required to reverse its judgment. See Piercev. State, supra.
 IV.
Nicks contends that the state violated the discovery requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), by not disclosing police reports which showed the following:
 "(a) James Edward Boyd had been linked to a violent robbery on Interstate 20 in Alabama that had a similar modus operandi
to the robbery and murder at the Bessemer Pawn Shop (the `Interstate 20 Robbery') (Rule 20 [, Ala.R.Crim.P.Temp., now Rule 32, Ala.R.Crim.P.], May 8, 1990, Hearing Transcript 62-64, Exhibit 12);
 "(b) Elizabeth Ann Underwood, an admitted accomplice in the Interstate 20 Robbery, had positively identified James Edward Boyd as the perpetrator of that robbery (Rule 20 Hearing Transcript 63-64, Exhibit 13-14);
 "(c) Venita Bishop, one of the only two people to identify Mr. Nicks as the perpetrator of the robbery and murder at the Bessemer Pawn Shop, had chosen James Edward Boyd, another prime suspect in the case, as the perpetrator in an earlier photo lineup (Affidavit of H. Jadd Fawwal, attached as Exhibit 1); and
 "(d) James Edward Boyd had made statements to his cousin that he needed money to leave town quickly and that he had a pistol. (Affidavit of H. Jadd Fawwal, Exh. B, pp. 4-5.)."
(C.R. 354-55.)
We reject Nicks's claim that the allegedly suppressed evidence regarding *Page 915 
Bishop's identification of Boyd and the information about Boyd create a reasonable doubt as to Nicks's culpability so as to require a new trial.
 "`To prove a Brady violation, a defendant must show (1) that the prosecution suppressed evidence, (2) that the evidence was exculpatory, and (3) that the evidence was material.' Hall v. State, 625 So.2d 1162, 1164 (Ala.Cr.App. 1993). In the Brady
context, `evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)."
Wilson v. State, 690 So.2d 449, 461 (Ala.Cr.App. 1995).
Additionally,
 "`[e]xculpatory evidence is "evidence which extrinsically tends to establish defendant's innocence of the crimes charged as differentiated from that which although favorable, is merely collateral or impeaching."' Commonwealth v. Jeter, 273 Pa. Super. 83, 416 A.2d 1100, 1102 (1979). `Evidence is exculpatory if it tends to disprove a fact in issue which is material to guilt or punishment.' State v. Carmichael, 240 Kan. 149, 727 P.2d 918, 923 (1986).
 "`Brady thus requires disclosure by the government of evidence that is both exculpatory and material. Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness. Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness may be determinative of a criminal defendant's guilt or innocence. If the exculpatory evidence "creates a reasonable doubt" as to the defendant's culpability, it will be held to be material.'"
 "United States v. Starusko, 729 F.2d 256, 260 (3rd Cir. 1984) (citations and footnote omitted)."
Bird v. State, 594 So.2d 644, 657 (Ala.Cr.App. 1990), rev'd on other grounds, 594 So.2d 676 (Ala. 1991).
Nicks argues that the state suppressed evidence that before trial Bishop had identified Boyd in a photograph, as the man she had observed just before the pawnshop was robbed. Essentially, he claims that if he had had this information he would have been able to effectively impeach Bishop's in-court identification of him.
 "`Suppressed evidence useful only for impeachment purposes is material if its disclosure probably would have resulted in acquittal.' United States v. Darwin, 757 F.2d 1193 (11th Cir. 1985), cert. denied, 474 U.S. 1110 (1986) (wherein the court held that additional evidence concerning the involvement of one of the State's witnesses in a drug transaction was not material where the appellant had already been able to question the witness's credibility and bias before the jury). Material evidence is that which `"creates a reasonable doubt that did not otherwise exist,"' United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976), and its omission `must be evaluated in the context of the entire record.' Carey v. Duckworth, 738 F.2d 875, 877 (7th Cir. 1984) (wherein the court held that the prosecutor's failure to disclose completely the deal between the State's witness and the D.E.A. would not have created a reasonable doubt that did not otherwise exist in the minds of the jurors, especially in light of previously admitted impeaching evidence)." *Page 916 
Frazier v. State, 562 So.2d 543, 554-55 (Ala.Cr.App.), rev'd on other grounds, 562 So.2d 560 (Ala. 1989).
The police notes submitted in support of this claim stated:
 "Miss Bishop picked Boyd's photo from the color spread and another subject from the black-and-white spread. She said she liked the features of the individual in the color photo, but that she like the skin tone and color of the individual in the black-and-white photo. She said she could not positively identify either photo being the man who entered her store. . . . She added that if she could see the suspect in a live lineup, she would be able to positively identify him."
(C.R. 366.) (Emphasis added.)
Clearly, the police report does not establish that Bishop selected Boyd "as the perpetrator" in the photographic lineup. As the police notes intimate, Bishop picked Boyd's photograph because "she liked the features." The report specifically states that she could not positively identify Boyd as the man she had observed before the robbery/murder at the pawnshop. Her selection of the photograph is not inconsistent with her testimony at trial and the evidence in the notes does not establish that Bishop testified falsely. Therefore, Nicks has failed to establish that this suppressed alleged impeachment evidence might have resulted in an acquittal. "To prevail on this sort of a Brady claim [that the State withheld requested, exculpatory impeachment material], the appellant must show that the prosecution either withheld or suppressed favorable evidence that would have created a reasonable doubt otherwise absent." United States v. Willis, 759 F.2d 1486,1499 (11th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144,88 L.Ed.2d 119 (1985). Nicks simply has not met this standard.
With regard to Nicks's claim that the state suppressed evidence concerning Boyd that was exculpatory — evidence that Boyd had been involved in a robbery in Tuscaloosa and had indicated to a relative that he needed some money — we conclude that Nicks has merely established that Boyd was, at the time, a suspect, but has failed to show any connection between Boyd and the robbery-murder at the pawnshop.
Initially, we note that in the Rule 32 hearing, Nicks's trial counsel admitted that he knew Boyd had been a suspect, that an eyewitness had picked Boyd out of a photographic lineup, and that a warrant, which was later recalled, had been issued for Boyd's arrest for the robbery-murder. Therefore, the defense knew about Boyd.
We find Nicks's argument that the nondisclosure of information concerning Boyd remarkably similar to an argument rejected by the United States Court of Appeals for the Eleventh Circuit in Jarrell v. Balkcom, 735 F.2d 1242, (11th Cir. 1984), cert. denied, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848
(1985):
 "While investigating the murder, the police investigated various leads and came up with several `possible suspects.' Petitioner contends that a Brady violation occurred because the defense and the jury had a right to know the names and evidence concerning these other suspects. The respondent contends that these `possible suspects' were not readily identifiable, in that these `possible suspects' were merely talked to by the police to see what possible information they might have; none of these persons were suspects in the sense that the investigation actually focused on them.
 "Brady requires the prosecution to produce evidence that someone else may have committed the crime. See Sellers v. Estelle, 651 F.2d 1074 (5th Cir. 1981). *Page 917 
In comparison with the other suspect in Sellers, the `other suspects' in the instant case were ephemeral. In Sellers, police reports indicated that another person had actually admitted committing the crime with which defendant was charged. Id. at 1075. In the instant case, police reports listed hundreds of possible suspects. Finding a Brady violation under these circumstances would be tantamount to requiring the government to turn over their entire investigation. Because Brady
created no such general constitutional right to discovery, see Weatherford v. Bursey, 429 U.S. 545, 559-60, 97 S.Ct. 837, 845-46, 51 L.Ed.2d 30 (1977), petitioner has failed to show a due process violation."
735 F.2d at 1258. See also Bradley v. State, 557 So.2d 1339
(Ala.Cr.App. 1989).
Likewise, Nicks has failed to show that the state had a duty to turn over the information about Boyd. Moreover, Nicks has failed to establish that the nondisclosure of the information about Boyd and his commission of a robbery in Tuscaloosa affected the outcome of his trial. The police reports reflect that Boyd was a potential suspect, but that he was quickly ruled out. As stated earlier, Nicks has shown no tangible connection between Boyd and the robbery-murder for which Nicks was convicted; therefore, our review of the record leads us to conclude that even if the evidence concerning Boyd was discoverable, no reasonable probability exists that the timely disclosure of this evidence would have affected the outcome of Nicks's trial. Nicks has failed to meet his burden of proof with regard to this claim.
 V.
Nicks contends that the circuit court erred in denying his petition because, he says, he was denied due process when the trial court denied him sufficient funds to retain the services of a psychiatrist. This claim was precluded by Rule 32.2(a) (5), Ala.R.Crim.P., as a claim which could have been, but was not, raised on direct appeal. The circuit court did not err in denying Nicks's petition regarding this claim.
Moreover, Nicks was evaluated by at least three psychiatrists on the issues whether he was competent to stand trial and whether he was competent at the time he committed the offense. Ake v.Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), does not guarantee him any additional due process rights. "An indigent defendant does not have `a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own,' Ake, 470 U.S. at 83, 105 S.Ct. at 1097." Whittle v.State, 518 So.2d 793, 794 (Ala.Cr.App. 1987). Nicks had access to a competent psychiatrist, Dr. Clifford B. Hardin, who conducted an examination and who was willing to testify as a defense witness. Nicks's constitutional rights were not violated. Cf. Wilson v.Greene, 155 F.3d 396 (4th Cir.), cert. denied, 525 U.S. 1012,119 S.Ct. 536, 142 L.Ed.2d 441 (1998).
 VI.
Nicks contends that the trial court erred in finding the following claims procedurally barred because they were raised at trial, but not on appeal:
 "a. Whether the trial court's denial of Nicks's motion for a continuance to obtain and analyze thoroughly Nicks's psychological records violated his rights to due process under the laws and constitution of Alabama and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution by depriving him the opportunity to adequately prepare and present his defense?
 "b. Whether the state failed to provide Nicks with the services of an independent *Page 918 
and competent psychiatrist in violation of Ake v. Oklahoma?
 "c. Whether Nicks was deprived of a fair trial in violation of the Eighth and Fourteenth Amendments to the United States Constitution because Nicks was unable to understand the proceedings against him or to assist counsel with his defense?
 "d. Whether Nicks's right to a fair trial by an impartial jury under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution was violated by the trial court's failure to grant a change of venue?
 "e. Whether the state's introduction of prejudicial and inflammatory diagrams and photographs at Nicks's trial violated Nicks's rights to a fair trial and due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama?
 "f. Whether Nicks's rights to a fair trial by an impartial jury were violated by the trial court's failure to grant defendant's motion to examine all prospective jurors on voir dire?
 "g. Whether Nicks was deprived of an impartial jury by the trial court's failure to quash the unconstitutionally composed venire in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama?"
(Nicks's brief to this Court at pp. xiii-xiv.)
Initially, we note that Nicks offers only bare allegations that the trial court erred in determining that these claims were procedurally barred. He offers no argument or support for his claim. We addressed the preclusion grounds of claims b and c in Parts V and VI, respectively, of this opinion. We conclude that the circuit court correctly determined that claims a, d, e, f, and g were procedurally barred pursuant to Rule 32.2(a) (2), and (a) (5), Ala.R.Crim.P., because they were raised and addressed at trial and could have been, but were not, raised and addressed on appeal.
 VII.
Nicks claims that both his trial and appellate counsel were ineffective. The fourth amended petition in this case, from which denial the instant appeal was taken, was filed on March 11, 1997. Therefore, the proper method for presenting claims of ineffective assistance of counsel for appellate review is through a post-conviction petition pursuant to Rule 32, Ala.R.Crim.P., as Nicks did in the instant case. See Ex parte Ingram,675 So.2d 863, 866 (Ala. 1996).
The United States Supreme Court, in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-pronged test to determine whether counsel was ineffective.
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish the prejudice component, "the defendant must show that there *Page 919 
is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2068.
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 13-34, 102 S. Ct. 1558, 1574-75, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' See Michel v. Louisiana, supra, 350 U.S. [91] at 101, 76 S.Ct. [158] at 164, [100 L.Ed.2d 83 (1955)]."
466 U.S. at 689, 104 S.Ct. at 2065. Nicks is required to "affirmatively prove prejudice" in making claims that his attorney's performance was deficient. 466 U.S. at 693,104 S.Ct. at 2067. Additionally, a reviewing court may determine if the appellant was prejudiced without regard to any deficiency of counsel's performance. 466 U.S. at 697, 104 S.Ct. at 2069.
 "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."
466 U.S. at 690, 104 S.Ct at 2066.
 A. CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
Nicks raises the following claims of ineffective assistance of trial counsel on appeal:
 "1. The trial court rendered trial counsel's assistance ineffective by denying their motion for a continuance to review critical medical records;
 "2. The state's failure to comply with Ake further undermined trial counsel's efforts;
 "3. The state administered a toxic dose of lithium to Nicks and never bothered to inform his trial counsel; and
 "4. By failing to move for a competency hearing despite clear doubts as to Nicks's competence, trial counsel rendered ineffective assistance."
(Nicks's brief on appeal at p. iv.)
With the exception of the claim asserted in paragraph 4, Nicks has failed to show *Page 920 
how his trial counsel's performance was deficient. Nicks's trial counsel moved for a continuance, requested funds for a psychiatrist, and was unaware that there was a toxic level of lithium in Nicks's bloodstream three days before Nicks's trial began. Trial counsel's actions with regard to the claims asserted in paragraphs 1, 2, and 3 were consistent with adequate representation as guaranteed by the Sixth Amendment. Moreover, our holdings with regard to Nicks's competence to stand trial and our determination on Nicks's direct appeal that the presentation of evidence to support his plea of not guilty by reason of insanity was adequate (see Nicks v. State, 521 So.2d at 1018) refute Nicks's claim that "but for" his trial counsel's performance the outcome of his trial would have been different.
With regard to the claim asserted in paragraph 4, our holding in Part II of this opinion establishes that even if Nicks's trial counsel had requested a competency hearing, Nicks would not have been declared incompetent. Therefore, because the substantive due process claim is without merit, we cannot conclude that Nicks's trial counsel was ineffective for failing to pursue a hearing.
Finally, we give weight to the determinations of the circuit judge, who also presided over Nicks's trial. The circuit court in its order stated:
 "Jadd Fawwal and Carl Wade Robinson represented the Petitioner at trial. As counsel admits in their brief, both of these attorneys are experienced and competent trial attorneys. Both have a great deal of experience and expertise in the field of criminal law and enjoy a good reputation with the Bench and Bar of this jurisdiction. Counsel prepared for trial and presented Mr. Nicks' case in a competent manner."
(C.R. 543.) Our review of the record supports the circuit court's findings. Nicks's trial counsel's representation allowed Nicks to receive a fair trial.
 B. CLAIMS OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.
Nicks contends that his appellate counsel was ineffective, because, he says, counsel failed to raise the following issues, which he says are meritorious:
1. Appellate counsel failed to raise a Pate claim;
2. Appellate counsel failed to raise an Ake claim;
 3. Appellate counsel failed to raise a Batson claim[8]; and
 4. Appellate counsel failed to raise a claim that the prosecutor violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
With regard to the claim asserted in paragraph 1, because we have concluded that Nicks was competent to stand trial (see Part II of this opinion), any claim regarding ineffective assistance of his appellate counsel in this regard is moot.
In regard to the claim asserted in paragraph 2, Nicks argues that his appellate counsel was ineffective for not challenging the adequacy of the assistance provided by Dr. Hardin under the precedent of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087,84 L.Ed.2d 53 (1985).
Nicks argues that, the United States Supreme Court's holding in Ake v. Oklahoma — that a criminal defendant is entitled to an independent mental professional to assist in his defense once a preliminary showing has been made that sanity is likely to be a significant factor at trial — which was issued before Nicks's appellate counsel filed his briefs with this Court, required appellate counsel to raise this claim. *Page 921 
We find the underlying substantive claim to be analogous to the claim made in Whittle v. State, 518 So.2d 793, 794
(Ala.Cr.App. 1987), in which we stated:
 "Following a defense motion for a psychiatric evaluation, the trial court ordered that the defendant be examined, prior to trial, at Taylor Hardin Secure Medical Facility in Tuscaloosa. As a result of the psychiatric evaluation, the defendant was found competent to stand trial and sane at the time of the offense. Under the circumstances, neither § 15-12-21, Code of Alabama 1975, nor Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), guarantees the defendant the further assistance of a psychiatric expert at state expense.
 "Although § 15-12-21(d) authorizes payment of court-approved expenses, `[t]he trial judge must find some reasonable basis for the expenditure of state funds before he may authorize' payment under the statute, Wiggins v. State, 440 So.2d 1164, 1167 (Ala.Cr.App. 1983) (emphasis added). Once the defendant has been found competent to stand trial and sane at the time of the offense, the trial court's conclusion that there is no `reasonable basis' for further state-authorized psychiatric expenses is proper. See Whisenhant v. State, 482 So.2d 1225, 1229 (Ala.Cr.App. 1982), aff'd in part and remanded in part, Ex parte Whisenhant, 482 So.2d 1241 (Ala. 1983), on remand, Whisenhant v. State, 482 So.2d 1246 (Ala.Cr.App.), reversed on other grounds, Ex parte Whisenhant, 482 So.2d 1247 (Ala. 1984). `Common sense, as well as sound legal authority, dictates that the trial judge not grant a psychiatric examination at state expense unless there is some reason to believe the accused was incompetent or insane.' Bailey v. State, 421 So.2d 1364, 1367 (Ala.Cr.App. 1982).
 "The Supreme Court's holding in Ake does not alter the result here. In Ake, the accused was ordered to undergo a pre-trial competency evaluation, but no examination was ever conducted to determine his criminal responsibility for the charged offense. `During Ake's 3-month stay at the state hospital, no inquiry had been made into his sanity at the time of the offense, and, as an indigent, Ake could not afford to pay for a psychiatrist.' Ake, 470 U.S. at 72, 105 S.Ct. at 1091. The Supreme Court held that because Ake had made a threshold showing that his sanity at the time of the offense was likely to be a significant issue at trial, and because Ake had never had an evaluation to determine his sanity at the time of the offense, he was denied due process of law. Ake, 470 U.S. at 74, 105 S.Ct. at 1092. The defendant in the present case was evaluated by a psychiatrist on the issues of competency to stand trial and ultimate criminal responsibility. Ake does not guarantee him anything more. An indigent defendant does not have `a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own,' Ake, 470 U.S. at 83, 105 S.Ct. at 1097; Isom v. State, 488 So.2d 12, 13 (Ala.Cr.App. 1986)."
Whittle v. State, 518 So.2d at 794.
In the present case, when the trial court became aware that Nicks's mental health might be an issue, it ordered that Nicks be evaluated by the Lunacy Commission at Taylor Hardin. At the time of Nicks's first evaluation by the Lunacy Commission, the mental-health experts determined that Nicks was not competent to stand trial; however, after treatment, they reported to the trial court that they had determined that Nicks was competent at the time of the offense and was competent to stand trial. Only after the trial court received this evaluation did it continue to conduct Nicks's pretrial proceedings and trial. Additionally, the trial court granted *Page 922 
Nicks's request for funds at the maximum amount provided by the Legislature for extraordinary expenses and experts.
At Nicks's trial, Nicks subpoenaed Dr. Hardin from the Lunacy Commission to testify. Nicks made no showing at the Rule 32 hearing that Dr. Hardin was uncooperative, unwilling to testify, or unavailable to discuss his opinion with Nicks's trial counsel.
Because the underlying claim is without merit, Nicks has failed to establish that his appellate counsel was ineffective with regard to this claim.
In the claim asserted in paragraph 3, Nicks argues that his appellate counsel's performance was ineffective for failing to argue on appeal that a Batson violation had occurred. We find it prudent to provide a chronological history of Nicks's appeal and of the decisions of the United States Supreme Court and the Alabama Supreme Court with regard to Batson.
 May 25, 1984 — Nicks was convicted of capital murder. At the time of Nicks's trial, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), controlled challenges to peremptory strikes of black prospective jurors by the prosecution and a defendant had to prove that a prosecutor had a history of systematically excluding, all potential black jurors from service on petit juries.
 July 16, 1985 — Trial court appointed appellate counsel, who was different from trial counsel, to represent Nicks on appeal.
 September 17, 1985 — Nicks's appellate counsel submitted Nicks's appeal on briefs.
 April 30, 1986 — The United States Supreme Court released Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 1722-23, 90 L.Ed.2d 69 (1986), holding that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial."
 December 19, 1986 — The Alabama Supreme Court in Ex parte Jackson, 516 So.2d 768 (Ala. 1986), held that when a defendant makes an appropriate Swain objection at trial, Batson applies retroactively.
 January 13, 1987 — The United States Supreme Court released Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), making application of Batson retroactive.
January 27, 1987 — This Court affirmed Nicks's conviction.
 February 10, 1987 — Nicks's appellate counsel filed an application for rehearing and a Rule 39(k) motion.
 March 10, 1987 — This Court denied his Rule 39(k) motion and overruled his application for rehearing.
 March 26, 1987 — Nicks's appellate counsel filed his petition for certiorari in the Alabama Supreme Court.
 June 24, 1987 — The Alabama Supreme Court granted his writ of certiorari.
 October 20, 1987 — Nicks's trial counsel wrote Nicks's appellate counsel a letter informing him that the state had used 11 of its 14 peremptory challenges to strike blacks. He also enclosed copies of his notes and the jury selection of Nicks's case.
 February 12, 1988 — Certificate of judgment was issued by this Court.
Initially, we note that Nicks's trial counsel did not make aBatson objection at trial. Nicks's trial occurred before the United States Supreme Court's decision in Batson was released. We conclude that Nicks's trial counsel did not render ineffective assistance for failing to make a Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, *Page 923 90 L.Ed.2d 69 (1986), objection after the jury was selected. We will not hold counsel ineffective for failing to forecast changes in the law. State v. Tarver, 629 So.2d at 17-18.
With regard to appellate counsel, we note that when Nicks was tried, Swain was the applicable law and there was no procedure to preserve a record such as envisioned under the Batson decision. See Watkins v. State, 632 So.2d 555 (Ala.Cr.App. 1992) (Taylor, J., dissenting.), cert. denied, 511 U.S. 1137, 114 S.Ct. 2153,128 L.Ed.2d 880 (1994). Nicks's appellate counsel was different from his trial counsel. Moreover, nothing in the record on direct appeal supported a Batson objection and there was no procedure to preserve a Batson objection when he submitted his appeal to this Court or to the Alabama Supreme Court.
At the Rule 32 hearing, however, Nicks established that while his case was pending in the Alabama Supreme Court, his trial counsel made his appellate counsel aware of a potential Batson
violation. Therefore, the dispositive question before us is: Was Nicks's appellate counsel ineffective for failing to attempt to supplement the record and his brief with a Batson argument and copies of Nicks's trial counsel's notes of the jury selection process, as well as any record the circuit court may have been able to provide after the case had been under submission with the Supreme Court for approximately four months. Based on our holding in State v. Tarver, we think not.
In State v. Tarver, when confronted with a similar situation, we stated:
 "[A] criminal defendant is guaranteed one appeal from his conviction, and that appeal is to this court. The Alabama Supreme Court has limited mandatory jurisdiction, which includes appeals from death penalty cases and discretionary jurisdiction through certiorari review. `"The appellant is entitled to effective assistance of counsel on first appeal of right."' Cunningham v. State, 611 So.2d 510, 511
(Ala.Cr.App. 1992), quoting Knotts v. State, 535 So.2d 202, 204 (Ala.Cr.App. 1987). At the time of the appellant's appeal `of right' to this court, there was no procedure by which a Batson claim could be raised and indeed no case law that held that Batson applied retroactively to all cases not final at the time Batson was released. Griffith, supra."
State v. Tarver, 629 So.2d at 18. See also Tarver v. Hopper,169 F.3d 710 (11th Cir. 1999). Likewise, because Nicks's claim of ineffective assistance of appellate counsel challenges counsel's actions after completion of Nicks's first appeal of right and because his appellate counsel was unaware of any potential Batson
violation when proceeding on his appeal to this Court, we conclude that counsel did not render ineffective assistance in the appeal before this Court.
We find support for our holding from the fact that Nicks did not admit into evidence at his Rule 32 hearing any certified records from his trial, with the exception of a stipulation by both parties that the state had used 11 of its 12 peremptory challenges to strike black individuals. Additionally, no evidence was presented to establish a Swain violation at the time of Nicks's trial. No testimony was presented that it was common practice by the prosecutors from the district attorney's office of Jefferson County to systematically strike blacks based on race. Cf. Jackson v. Herring, 42 F.3d 1350 (11th Cir. 1995) (at hearing, the petitioner introduced "overwhelming" evidence of a Swain
violation, including prosecutor's testimony that there was widespread and systematic misuse of peremptory challenges by the state). *Page 924 
We acknowledge that, as Nicks argues, in Watkins v. State, supra, a majority of this court held that appellate counsel had rendered ineffective assistance when counsel raised a Batson
objection on appeal to the Alabama Supreme Court, but failed to supplement the record pursuant to 10(f) (now 10(g)), Ala.R.App.P., to include the jury lists. We find this case distinguishable; Watkins's appellate counsel, on request for certiorari review from Watkins's capital murder conviction, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), specifically raised this issue, and the issue was decided adversely to the appellant because the record did not support the claim. In this situation, a Batson claim was never raised before this Rule 32 proceeding. Although Nicks argues that his trial counsel's motion to quash the venire was a timely Swain objection, our review of this motion indicates that counsel merely challenged the venire as not including a fair cross-section and did not establish an objection to the prosecutor's use of peremptory strikes. In a Swain objection to preserve a Batson claim, the defendant had to "show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time."Swain, 380 U.S at 227, 85 S.Ct. at 839. Nicks's motion to quash the venire was not sufficient to put the trial court on notice that he was alleging a Swain violation as to the state's use of its peremptory challenges. See Nickerson v. State, 523 So.2d 504
(Ala.Cr.App. 1987) (illustrating a timely Swain objection to preserve a pre-Batson challenge to a prosecutor's peremptory strikes). Therefore, the issue was never preserved for appellate review and the holding in Watkins is distinguishable.
Because Nicks was granted a new penalty-phase hearing, Nicks's contention that his appellate counsel was ineffective for failing to contend that the prosecutor's comments during the penalty phase of his trial violated Caldwell v. Mississippi, supra, are moot. Nicks was granted a new penalty-phase hearing; therefore, his appellate counsel cannot be ineffective for failing to raise claims from his first penalty phase.
Nicks has failed to establish that "but for" appellate counsel's performance, the outcome of his appeal would have been different.
 VIII.
Nicks contends that the circuit court erred in finding the following claims were barred from review because Nicks did not raise them at trial or on appeal:
 "a. Whether Nicks was deprived of a fair trial in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama by the prosecutor's use of peremptory challenges in a racially discriminatory manner?
 "b. Whether Nicks was deprived of an impartial jury through juror exclusion in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama?
 "c. Whether Nicks was placed in a lineup in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama?
 "d. Whether Nicks was denied due process as guaranteed by the laws and Constitution of Alabama and the Eighth and Fourteenth Amendments to the United States Constitution by the admission of evidence obtained in an unconstitutionally tainted lineup?
 "e. Whether Nicks was denied a fair trial by the trial court's failure to instruct the jury that the credibility and weight of the testimony of any witness is to be determined by the jury, and to *Page 925 
correct the prosecutor's assertions concerning the credibility of the witnesses to the jury in its closing arguments?
 "f. Whether Alabama's death penalty was arbitrarily and discriminatorily applied in this case in violation of the Eighth and Fourteenth Amendments to the United States Constitution?
 "g. Whether the trial court's failure to give a lesser included offense instruction resulted in an unconstitutional and illegal capital conviction and sentence of death.
 "h. Whether the failure of the court to fully transcribe the trial court proceedings deprived Nicks of full appeal and statutorily mandated review of his capital sentence and condition?
 "i. Whether the trial court erroneously placed the burden of persuasion on mental insanity on the defendant in violation of Alabama law and the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of Alabama?
 "j. Whether Nicks was deprived a fair trial in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of Alabama because the state withheld exculpatory information?"
(Nicks's brief to this Court at pp. xv-xvi.)
All of the above claims, with the exception of those asserted in paragraphs b and j, were properly determined by the circuit court to be procedurally barred pursuant to Rule 32.2(a) (3) and (5). Claim b was raised at trial, but not on appeal; therefore, it is procedurally barred pursuant to Rule 32.2(a) (2) and (5). This determination, however, does not require reversal. SeePierce, supra. Claim j is addressed in Parts III and IV of this opinion. No reversible error occurred with regard to the circuit court's application of the procedural bars as alleged in this issue.
 IX.
Additionally, no error occurred in the circuit court's determination that Nicks's claim that he was denied a fair trial because the trial court admitted evidence of an unadjudicated collateral act was procedurally barred because it was raised and addressed at trial and also was raised and addressed on appeal. Rule 32.2(a) (2) and (4), Ala.R.Crim.P. See Nicks v. State, 521 So.2d at 1025-1031.
 X.
Lastly, Nicks claims that the circuit court erred in "failing to consider [his] claims as a whole." (Nicks's brief to this Court at p. 27.) Specifically, he argues that the circuit court erred in not addressing the following claim:
 "Although no one error may rise to a constitutional violation, the cumulative effect of all the errors constitutes a denial of petitioner's rights under the fifth, sixth, eighth and fourteenth amendments to the United States Constitution and the laws and Constitution of Alabama."
(Nicks's brief to this Court at p. 27.)
We have considered and reviewed the error alleged in each claim presented by Nicks as well as the cumulative effect of the alleged errors and find that the cumulative effect does not require reversal. The claimed errors have now been determined to be either precluded or without merit; therefore, because no single instance warranted relief, we will not consider the cumulative effect to do so.
Because all of Nicks's claims are either precluded or lack merit, the circuit court properly denied Nicks's petition. Moreover, we note that this Court on direct appeal searched the entire transcript for error, pursuant to Rule 45A, Ala.R.Crim.P. After evaluating the evidence presented at the evidentiary hearing on Nicks's Rule 32 *Page 926 
petition, we conclude that Nicks received a fair trial and that the circuit court properly denied relief with regard to Nicks's conviction.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
Long, P.J., and McMillan and Baschab, JJ., concur; Cobb, J., recuses herself.
[2] The original petition in this case was filed pursuant to Rule 20, Ala.R.Crim.P. (Temp.) Upon adoption of the Alabama Rules of Criminal Procedure in 1991, Rule 20 became Rule 32. All references to Nicks's petition in this appeal will be to Rule 32.
[3] Dan Reynolds, the circuit judge who presided over Nicks's trial, also presided over Nicks's Rule 32 proceeding.
[4] The circuit court referred to the precluded claims only by the letter used in Nicks's petition to designate the claims. In order to fully disclose the nature of the claims, they are set out here as they appear in the petition. (C. 316-21.)
[5] The state conceded in oral argument that the procedural bars of Rule 32 do not apply to a substantive due process claim concerning competency.
[6] Additionally, we note that the trial court conducted a discussion with Nicks on January 5, 1983. During the discussion, Nicks communicated his understanding of the charges and his plans for a defense. (R. on direct appeal at pp. 3-5.)
[7] See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963).
[8] See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).